**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| SAXON INNOVATIONS, LLC,<br><br>      PLAINTIFF,<br>            v.<br><br>NOKIA CORP.,<br>NOKIA INC.,<br>LG ELECTRONICS INC.,<br>LG ELECTRONICS U.S.A., INC.,<br>LG ELECTRONICS MOBILECOMM U.S.A. INC.,<br>SAMSUNG ELECTRONICS CO., LTD.,<br>SAMSUNG ELECTRONICS AMERICA, INC.,<br>SAMSUNG TELECOMMUNICATIONS AMERICA, LLC.<br>PALM, INC.,<br>RESEARCH IN MOTION LTD.,<br>RESEARCH IN MOTION CORPORATION,<br>HIGH TECH COMPUTER CORP.,<br>HTC AMERICA, INC.,<br>SHARP CORPORATION,<br>SHARP ELECTRONICS CORP.,<br>NINTENDO CO., LTD.,<br>NINTENDO OF AMERICA INC.<br><br>                        DEFENDANTS. | CASE  NO. 6:07-cv-490 (LED) |

**DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR ENTRY OF A PROTECTIVE ORDER
AND
DEFENDANTS' CROSS MOTION
FOR ENTRY OF DEFENDANT'S PROTECTIVE ORDER**

        Plaintiff filed a motion for protective order governing the handling of confidential

information in this case.  (See Docket Item ("D.I.") 153.)  Defendants respond herein and cross

move for entry of a Protective Order in the form attached to this paper as Exhibit A.  While the

parties have agreed to many of the terms of a general Protective Order, three important issues

remain[1]: (1) whether each Defendant should be permitted to negotiate separately as to the

location of source code inspection, thereby allowing those Defendants who have a secure facility

already in place to use that facility (as opposed to being forced to produce source code at

Defendants' expense at a location of Plaintiff's choosing);  (2) whether Defendants may

designate the confidentiality of their production on a document-by-document basis (as opposed

to being categorically excluded from designating certain documents as "Highly Confidential –

Attorneys' Eyes Only" based on Plaintiff's ill-defined categories); and (3) whether Defendants

are entitled to an explicit provision precluding the use of compilers to manipulate Defendants'

respective computer source code.   For the reasons discussed below, the answer to each of these

questions should be "Yes."

## ARGUMENT

**1.     DEFENDANTS SHOULD BE PERMITTED TO PRODUCE SOURCE CODE IN THEIR PREEXISTING SECURE FACILITIES OR IN OTHER FACILITIES OF THEIR CHOOSING.**

Section 6.B.ii of Defendants' Proposed Protective Order (Ex. A) provides that:

> The producing party shall make the source code available
> electronically and in text searchable form in a secure room at a
> secure facility selected by the producing party.

Plaintiff has instead proposed that Defendants produce source code at a location of *Plaintiff's*

choosing, which happens to be a Boston-area facility convenient to Plaintiff's lead outside

counsel.  Plaintiff also proposes that Defendants bear the cost of maintaining the facility chosen

by Plaintiff.

This is not a single defendant case.  Rather, Plaintiff sued eight separate corporate

families.  Some of the Defendants are competitors, while others are not even in the same

industry.  The accused products range from cell phones to video game consoles.  Despite all of

---

[1] A summary of the disputed provisions is provided as Exhibit B.

these differences, Plaintiff seeks to force inflexible requirements upon the Defendants with respect to the production of computer source code.  There is no factual or legal basis for Plaintiff's position.

As the Court likely is well aware, computer source code (i.e., the human readable form of software) is one of the most highly sensitive types of information that technical companies possess.  The structure and functionality of that source code defines the operation of the electronic devices that the companies sell.  Accordingly, cellular telephone makers and other electronics manufacturers guard their source code with the utmost care and are agreeable to releasing the relevant code to litigation opponents only under the safest of conditions.  A mistake in the handling of such code, especially since it is capable of being copied and transmitted electronically, could result in the catastrophic and irreparable loss of a company's extremely valuable trade secrets.

Because of other pending patent litigations (including other cases before this Court), some of the Defendants have already established secure facilities for the purpose of producing source code.  Rather than use those facilities, which are paid for entirely by the Defendants who have established those facilities, Plaintiff seeks to have those Defendants expend additional time and money to establish other facilities for source code inspection, which would present additional security risks.  There is no justification for such onerous demands by the Plaintiff.

By way of example, Nokia Inc. ("Nokia"), which is headquartered in Dallas, has a pre-existing secure facility located in Dallas and paid for by Nokia.  The facility is located near Nokia's offices and, thereby, Nokia's staff can provide the requisite technical support to assist with source code production.  That secure facility is presently in use for source code production by Nokia in another litigation, (Michael S. Sutton Ltd. v. Nokia Inc. et al., 6:07-cv-00203-LED),

which is pending before this Court. Likewise, Defendant Research In Motion Corporation

("RIM") has a pre-existing secure facility for source code review in the Dallas, Texas area, near

RIM's U.S. offices, for another pending patent litigation.

Plaintiff would have Nokia and RIM establish additional secure facilities, at those

Defendants' time and expense, in Boston, Massachusetts, where Plaintiff's lead outside counsel

just happens to be located. Apart from that choice of counsel, this case has no connection to

Boston.[2] Therefore, there is no justification for requiring Nokia and RIM to establish a secure

facility in Boston. Cf. Polycom, Inc. v . Codian, Ltd., 2007 WL 194588, *3-4 (E.D. Tex. Jan. 22,

2007) (Magistrate Judge Craven) (attached as Exhibit C) (refusing to transfer source code

inspection to a location more convenient to Plaintiff's counsel, when that location had no other

connection to the case).

Even if Plaintiff agreed to bear the cost and effort of establishing a new secure facility in

Boston, such an arrangement would be unduly burdensome to Nokia and RIM (in terms of

orchestrating the safe transfer of source code) and would present a serious threat to the security

of their carefully guarded trade secrets. Nokia and RIM are competitors, and the source code is

obviously a critical component of their products. Opening up additional facilities to house their

respective source code would present an unacceptable risk; and consolidating the respective

source code of RIM and Nokia in the hands of a single third-party would present an even more

unacceptable and unnecessary risk.

There is likewise no basis to *require* the Defendants that do not have pre-existing source

code facilities (LG, Samsung, Palm, HTC, Sharp and Nintendo) to produce their source code in

Boston and at their own expense. None of these other Defendants' U.S. engineering operations

or counsel is located in the Boston area. While some Defendants without pre-existing facilities

---

[2] Plaintiff itself is a Texas corporation with corporate offices in Tyler. (See D.I. 120 (Amended Complaint) at ¶ 3.)

*may be* amenable to using secure facilities in Boston or another mutually agreeable location (particularly if they can share expenses between them to defray costs), Plaintiff's proposal forces its unreasonable approach on all Defendants. In contrast, Defendants' proposal allows for some Defendants to negotiate with Plaintiff for an agreeable location while allowing others to justifiably use their pre-existing facilities.[3]

The cost and risks to the Defendants that are associated with Plaintiff's proposal are readily cognizable harms, and the proposal is entirely based on the convenience to its outside counsel in a place with no relationship to, and half the country away from, Plaintiff's chosen forum. (See, e.g., D.I. 153 (Plaintiff's Motion) at 6 (seeking "archival site *convenient for Saxon* to conduct its discovery") (emphasis added).) Plaintiff itself chose to file this action in this district against eight separate Defendants with primary places of business around the country (and the world). Therefore, Plaintiff cannot be heard to complain that the production of source code by Defendants in different locations would be inconvenient to Plaintiff – any alleged inconvenience is Plaintiff's own doing. For these reasons, Defendants respectfully request that the Court enter their Protective Order, with section 6.B.ii included in the form shown in Exhibit A.

---

[3] Plaintiff's statement that Defendants "initially agreed to production of such source code at a trusted third-party facility (for example, in Boston where Saxon's outside counsel are based) [but] later retracted this position" is incorrect. While there was a request by Plaintiff to consider such a proposal, Defendants never agreed to Plaintiff's onerous proposal during the parties' extensive negotiations.

## II.     DEFENDANTS HAVE A RIGHT TO DESIGNATE THEIR PRODUCTIONS ON A DOCUMENT-BY-DOCUMENT BASIS AND TO PREVENT PLAINTIFF'S IN-HOUSE COUNSEL AND OTHER EMPLOYEES FROM SEEING SENSITIVE TECHNICAL AND BUSINESS INFORMATION.

In accordance with the nearly universal practice in cases where confidential and technical business information is produced, Section 2 of Defendants' Proposed Protective Order (Ex. A) calls for documents to be designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY" on a document-by-document basis:

> 2.     Protected Documents shall not include (a) advertising materials, (b) materials that on their face show that they have been published to the general public, or (c) documents that have been submitted to any governmental entity without request for confidential treatment.  By way of non-limiting example, Protected Documents in one or more of the following categories may qualify for the "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY" designation:  (i)   non-public technical information, including schematic diagrams, manufacturing and engineering drawings, engineering notebooks, specifications, research notes and materials, technical reference materials, and other non-public technical descriptions and/or depictions of the relevant technology;  (ii)   non-public damage-related information (e.g., the number of products sold, total dollar value of sales products, and profit margins);  (iii)   non public financial information;  (iv)   customer lists;  (v)   business and/or marketing plans;  (vi)   price lists and/or pricing information; and (vii) information obtained from a non-party pursuant to a current nondisclosure Non-Disclosure Agreement ("NDA").

Plaintiff, on the other hand seeks to delineate in advance categories of documents that, regardless of their content, are expressly precluded from being designated as HIGHLY CONFIDENTIAL.  To that end, Plaintiff proposes adding the following language to Defendants' proposal:

> Notwithstanding the foregoing, HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY documents do not include (1) technical information that is not maintained as a trade secret, (2) technical information that is provided to third parties in the

6

ordinary course of business; (3) revenue and unit information; or
(4) licenses that form the basis for a claim or defense.

(D.I. 153 (Plaintiff's Motion), Ex. 2 at 1.)  As explained below, Plaintiff's proposal is contrary to

the established practice whereby confidentiality designations and challenges are made on a

document-by-document basis, and Plaintiff's Motion fails to disclose material facts about

Saxon's business that make it inappropriate for Saxon's in-house counsel and employees to have

wholesale access to the sensitive technical and business information of the Defendants.

**A**.    **Confidentiality Designations And Challenges Should Be Made On A    Document-By-Document Basis.**

Plaintiff does not provide any support for its contention that documents should be

designated in pre-defined groups, as opposed to being reviewed on an individual basis to

determine the particular document's appropriate designation.  Plaintiff's proposal is inconsistent

with the Patent Rules, which explicitly provide that (absent the entry of a formal order) it is up to

the producing party to designate what it deems entitled to Outside Attorneys Eyes Only

designation:

> 2-2. Confidentiality.
>
> If any document or information produced under these Patent Local Rules is **deemed confidential by the producing party** and if the Court has not entered a protective order, until a protective order is issued by the Court, the document shall be marked "confidential" or with some other confidential designation (such as "Confidential – Outside Attorneys Eyes Only") by the disclosing party and **disclosure of the confidential document or information shall be limited to each party's outside attorney(s) of record and the employees of such outside attorney(s)**.
>
> If a party is not represented by an outside attorney, disclosure of the confidential document or information shall be limited to one designated "in house" attorney, whose identity and job functions shall be disclosed to the producing party 5 court days prior to any such disclosure, in order to permit any motion for protective order or other relief regarding such disclosure. The person(s) to whom disclosure of a confidential document or information is made under this local rule shall keep it confidential and use it only for purposes of litigating the case.

(P.R. 2-2 (emphasis added).)

Defendants' proposed language for the Protective Order (which is substantially identical to the language of the protective order entered by this Court in the <u>Michael S. Sutton, Ltd. v. Nokia Inc. et al.</u> litigation previously mentioned) allows the producing party to designate its production on a document-by-document basis as contemplated by the Patent Rules. (<u>See</u> Ex. A, Section 2; P.R. 2-2.) If the receiving party does not agree with a particular designation, the receiving party may challenge the designation. (Ex. A at Section 3.) The burden of establishing the confidentiality of the document falls on the party making the designation. (<u>Id</u>.) This procedure allows Plaintiff to challenge any designation that it believes to be erroneous.[4]

In sharp contrast, Plaintiff attempts to preclude Defendants from designating certain documents as ATTORNEY'S EYES ONLY without permitting Defendants to consider whether there is confidential information in the document that merits the designation. It would be highly prejudicial to Defendants to be forced to agree up front to produce currently unidentified documents at a lower confidentiality level than the documents might rightfully deserve. For example, Plaintiff seeks to prohibit defendants from designating as "Highly Confidential" any "technical information that is provided to third parties in the ordinary course of business." (<u>See</u> Ex. B at 2; D.I. 153 (Plaintiff's Motion), Ex. 2 at 1.) However, Defendants' direct customers are,

---

[4]      Plaintiff attempts to convolute the underlying issue by citing a myriad of cases regarding the necessity to show "good cause" for the entry of a Protective Order. The issue in the cases Plaintiff cites related to whether a Protective Order was necessary at all, not whether, as here, certain categories of documents should be excluded from protection without ever being reviewed. <u>See</u>, <u>e.g.</u>, <u>In re Terra Int'l, Inc.</u>, 134 F.3d 302, 306-307 (5th Cir. 1998) (overruling District Court's entry of a protective order sequestering fact witnesses). Thus, these cases are irrelevant because all parties in this litigation agree that "good cause" exists and a Protective Order is necessary in this litigation to protect Defendants' confidential information. Other cases cited by Plaintiff, most of which are non-binding, are also misplaced because they address the permissibility of having certain individuals review documents, and do not address the wholesale exclusion of documents from protection under a Protective Order. <u>See</u>, <u>e.g.</u>, <u>Infosint v. H. Lundbeck</u>, 2007 WL 1467784, at *5 (S.D.N.Y. May 16, 2007) (denying patent counsel from viewing highly-confidential documents). The issue in the instant action is directed to whether certain documents can be precluded from a higher designation without regard to the documents' content. None of the cases cited by Plaintiff address that issue.

for the most part, major wireless service providers (e.g., Verizon, Sprint, T-Mobile and AT&T) to whom Defendants provide technical information under strict non-disclosure agreements. Accordingly, it is incorrect to assume, as Plaintiff does, that technical information provided by Defendants to their customers is not proprietary or trade secret information. Of course, there may be categories of documents that the Defendants provide to their customers that are not appropriate for designation as "Highly Confidential." But, as stated above, that is the reason that confidentiality designations should be made on a document-by-document basis.

Plaintiff also seeks to prevent Defendants from designating any "revenue and unit information" as "Highly Confidential." However, in contrast to summary financial information that is publicly available in the Defendants' S.E.C. (or foreign counterpart) filings, Defendants' product specific revenues and unit sales information is highly confidential information that is almost never publicly disclosed. Similarly, Defendants' license agreements also contain highly sensitive information for which the higher designation is warranted and typically cannot be produced without the prior consent of the other parties to those agreements.

For these reasons, the document-by-document approach proposed by Defendants is a more reasonable approach than Plaintiff's "carve out" approach.

**B.      There is A Significant Risk of Harm to Defendants If Their Sensitive Business and Technical Information Is Disclosed to Saxon's In-House Counsel and Employees.**

Plaintiff argues that Defendants will suffer "no competitive harm" if its in-house counsel and employees[5] are given unfettered access to Defendants' sensitive business information because, it says, Plaintiff is a mere "patent licensing company, as opposed to a developer, inventor or researcher." (D.I. 153 (Plaintiff's Motion) at 11.) Plaintiff is far too modest about its

---

[5]  Although Plaintiff's Motion focuses on "in-house" counsel, it fails to note that information that is designated "Confidential" may be disclosed not just to in-house counsel, but "any person assisting outside counsel or such in-house counsel in preparation of this case." (See Ex. B at 2; D.I. 153 (Plaintiff's Motion), Ex. 2 at 1.)

business.  The named plaintiff in this case—Saxon Innovations LLC—was created in 2007 to hold title to and enforce a portfolio of almost 200 patents it acquired from an Austin, Texas semiconductor company that year.  Saxon's "offices" appear to be a mail-drop at 100 East Ferguson in Tyler.  The people (and money) behind Saxon are a New York investment firm, Altitude Capital Partners ("ACP"), whose business is buying and enforcing intellectual property assets.  (See Ex. D (excerpts from ACP's web site at www.altitudecp.com) at 1.)  Notably, Saxon's CEO, William Marino, is a principal and General Counsel of ACP and was a patent trial lawyer before joining the firm.  (See Ex. D at 5 (Mr. Marino's bio from www.altitudecp.com); Ex. E Saxon's Initial Disclosure, served May 21, 2008 (identifying William Marino as Saxon's CEO); Ex. F (May 22, 2006 ACP Press Release (announcing Mr. Marino's appointment as ACP's General Counsel).  ACP's web site lists investments by the firm in intellectual property in many technical areas in which Defendants conduct business, including high speed data communications, personal communications devices, network security, e-mail mobility solutions and semiconductors.  (See Ex. D at 2)  Moreover, ACP's web site touts how its "inter-disciplinary team has extensive intellectual property knowledge, and broad transactional, licensing, litigation and private equity investment experience" and that its "due diligence process utilizes [its] internal team and an extensive team of external economic consultants, technical experts, business/management consultants and IP lawyers to provide expert analysis of the assets and the market for those assets."  (Ex. D at 1.)

ACP/Saxon's business model and Mr. Marino's status as ACP's General Counsel and Saxon's CEO creates a significant (if not certain) risk that any of Defendants' sensitive business information disclosed to Saxon's in-house counsel and employees could be used by ACP in connection with its other intellectual property investments and enforcements.  Likewise, if

ACP's team of "technical experts" is given access to Defendants' product designs, there is a significant risk that this information could be used in identifying patents for ACP to acquire and enforce.  In view of these facts, Plaintiff's request that its in-house counsel and employees be given blanket access to categories of documents is wholly inappropriate.[6]  Finally, Plaintiff counters that allowing its in-house counsel to review certain documents may be helpful in the potential settlement of this case.  While that may or may not be true, the risks associated with creating a blanket rule allowing Plaintiff's in-house counsel to see the proprietary and highly confidential information carved out in its proposed protective order far outweighs the value that such documents may have in settlement discussions.  Indeed, if Plaintiff's counsel believes that a certain document would be helpful in settlement discussions if shown to Plaintiff's in-house counsel, then Plaintiff simply may ask the producing party whether the document may be shared with Plaintiff's in-house counsel.  Plaintiff ignores the fact that if any Defendant were engaged in constructive settlement talks with Plaintiff, it would be in that Defendant's best interest to share information that would help facilitate an equitable resolution.[7]  Thus, the producing party can evaluate Plaintiff's requests when presented.

If Defendants' Proposed Protective Order is adopted by this Court, Plaintiff will have the right to challenge any designation of produced documents.  Under the circumstances, this approach is more reasonable than Plaintiff's approach, which would, on a wholesale basis, preclude Defendants from appropriately designating certain categories of documents, with no recourse.

---

[6]  These facts, which Plaintiff neglected to disclose to the Court, establish beyond question that Mr. Marino is a "competitive decision-maker."  (See D.I. 153 (Plaintiff's Motion) at 10.)

[7]  Moreover, the Defendants have already told Plaintiff that they will consider allowing certain of Plaintiff's in-house counsel to review selected summary financial information, but this issue should be addressed (as it commonly is) on a case-by-case basis, once Defendants have produced financial information in the case.  Inexplicably, Plaintiff has rejected this offer.

### III.    COMPILING OF SOURCE CODE IS IRRELEVANT, NOT PROBATIVE AND NOT CONTEMPLATED BY THE RULES

Section 6.B.iv of Defendants' Proposed Protective Order (Ex. A) states:

> The receiving party may use appropriate tool software on the Source Code Computer, which shall be installed by the producing party, including text editors and multi-file text search tools such as "grep." Specific tools may include (but not be limited to): Visual Slick Edit, Source-Navigator, PowerGrep, and ExamDiff Pro, or similar programs. Should it be necessary, other mutually agreed upon tools may be used. Licensed copies of agreed upon tool software shall be downloaded and installed on the Source Code Computer by the producing party, and paid for by the receiving party. In no event shall the receiving party use any compilers in connection with the producing party's source code.

This provision ensures that plaintiff is provided with the necessary tools to review Defendants' source code and prohibits the compiling of that source code. Plaintiff seeks permission to compile source code.

"Compiling" is the process of converting computer programs that are written in human-readable form into a format that is only machine-readable. Compiled code is the form of software that is actually present in consumer electronic devices. In most cases, the compiled code can only be run on the specific processors for which the source code was compiled. On the other hand, as a human-readable form of software, the source code is particularly appropriate for inspection on a PC in a source code inspection facility. However, once that code is compiled into the binary representation appropriate for a specific processor, the compiled code is no longer meaningful to the human reviewer. To witness the operation of the compiled code, the most appropriate mechanism is to actually use the product at issue (e.g., a cell phone). If Plaintiff contemplates attempts to run the compiled code in conditions different from those within the accused products, then such activity is not probative of relevant information in the case and has the potential to be prejudicial as an inaccurate representation of actual product functionality.

In conferring on this issue, Plaintiff could not articulate any probative value that could come from attempting to compile the source code, particularly when the agreed upon portion of the protective order provides Plaintiff and its experts the tools necessary to analyze the source code.  Defendants contend that the attempted use of compilers offers no probative value and should be expressly prohibited.

In its briefing, Plaintiff states that compiling the source code would allow it to "confirm [the source code's] completeness and operation."  (D.I. 153 (Plaintiff's Motion) at 2.)   First, Plaintiff is not entitled to every piece of code on the complicated Accused Instrumentalities when its own infringement contentions contain little to no reference to the actual functionality of the overall devices themselves.  Instead, the only relevant source code is that which is directly related to the key components upon which Plaintiff bases its infringement allegations.  Compiling those portions of source code is a meaningless exercise as it is actually the entirety of the compiled source code (not just snippets thereof) that runs on the processors in Defendants' devices.

Second, Plaintiff appears to be envisioning the source code as a simple application that runs on a typical operating system.  The devices at issue generally do not work that way.  Instead, there are a myriad of interrelated hardware components with their own portions of code.  Only if one were to assemble all the necessarily hardware and compiled software would he or she be successful in creating the final product.  If Plaintiff seeks to confirm the operation of the final product, there is a much less burdensome way to attain that information and that is to examine the product itself.

Third, Plaintiff has yet to offer any explanation as to why the source code analysis tools explicitly listed in the agreed upon provision 6.B.iv, such as Visual Slick Edit, Source-Navigator,

PowerGrep, and ExamDiff Pro would be insufficient for Plaintiff's purposes.  These tools are specifically designed to enable the user to analyze source code in a variety of ways, such as by searching for all calls of a certain function, the use of particular header files, or the use of certain variables.  These programs allow the user to analyze the source code as it is produced without modifying it.  Additionally, Plaintiff's experts and counsel are presumably versed in source code and should be able to evaluate the "completeness and operation" of the code without the use of a compiler.

Fourth, allowing the reviewing party to compile the code is not contemplated by the Patent Rules in this district.  Specifically, the source code in this case will be produced pursuant to Patent Rule 3-4 which states that "the party opposing a claim of patent infringement must produce or make available for inspection and copying:  (a) Source code, . . . ."  P.R. 3-4 (a).  The rule does not apply to object code or the creation thereof, but clearly states that defendants must make the relevant "source code" available for "inspection."  However, compilers do more than "inspect" code.  They translate and transform the source code into another computer language (object code).  Thus, the use of compilers would allow the reviewing party to manipulate the code which is far beyond the "inspection" allowed by the local Patent Rules.

For all these reasons, Defendants request that the Court enter Defendants Proposed Protective Order containing an express prohibition on compiling Defendants' source code.

## **CONCLUSION**

For the foregoing reasons, Defendants request their countermotion be granted and for entry of Defendant's proposed Protective Order, attached hereto as Exhibit A.

14

Dated:  July 10, 2008                        Respectfully submitted,


                                            */s/ Diane V. DeVasto*
                                            Diane V. DeVasto
                                            State Bar No. 05784100
                                            dianedevasto@potterminton.com
                                            POTTER MINTON
                                            A Professional Corporation
                                            110 N. College, Suite 500
                                            Tyler, Texas 75702
                                            Telephone:  903/597-8311
                                            Facsimile:  903/593-0846

                                            Alexas D. Skucas
                                            askucas@kslaw.com
                                            Steven T. Snyder
                                            ssnyder@kslaw.com
                                            Robert F. Perry
                                            rperry@kslaw.com
                                            **KING & SPALDING LLP**
                                            1185 Avenue of the Americas
                                            New York, NY 10036-4003
                                            Telephone:  (212) 556-2100
                                            Facsimile:   (212) 556-2222

                                            Scott Edward Kolassa
                                            skolassa@kslaw.com
                                            Goodwin Procter LLP
                                            599 Lexington Avenue
                                            New York, NY 10022
                                            Telephone:  (212) 556-2119
                                            Facsimile:   (212) 556-2222

                                            **ATTORNEYS FOR DEFENDANTS
                                            NOKIA CORPORATION AND NOKIA INC.**

_/s/ Collin W. Park_
_(with permission by Diane V. DeVasto)_
Winstol D. Carter, Jr.
wcarter@morganlewis.com
Morgan Lewis & Bockius - Houston
1000 Louisiana Street, Suite 4200
Houston, TX 77002
(713) 890-5000
Fax: (713) 890-5001

Collin W. Park
cpark@morganlewis.com
Morgan Lewis & Brockius
1111 Pennsylvania Avenue, N W
Washington, DC 20004
202/739-3000
Fax: 202/739-3001

**ATTORNEYS FOR DEFENDANTS LG
ELECTRONICS INC., LG ELECTRONICS
USA INC., AND LG ELECTRONICS
MOBILECOMM U.S.A., INC.**

_/s/ Michael K. Plimack_
_(with permission by Diane V. DeVasto)_
Michael M. Markman
Michael.Markman@hellerehrman.com
Michael K. Plimack
michael.plimack@hellerehrman.com
Heller Ehrman LLP - San Francisco
333 Bush St
9th Floor
San Francisco, CA 94104
415/772-6926
Fax: 415/772-3802

Robert Thomas Haslam, III
robert.haslam@hellerehrman.com
Catherine Shiang
catherine.shiang@hellerehrman.com
Heller Ehrman LLP- Menlo Park
275 Middlefield Rd
Menlo Park, CA 94025
650-324-7073
Fax: 650-324-0638

Jeffrey S. Walker
jeffrey.walker@hellerehrman.com
Heller Ehrman LLP - Madison
1 E Main St., Ste. 201
Madison, WI 53703
608/663-5407
Fax: 608/663-7499

Eric M. Albritton
ema@emafirm.com
Attorney at Law
P.O. Box 2649
Longview, TX 75606
903/757-8449
Fax: 19037587397

**ATTORNEYS FOR DEFENDANTS SAMSUNG ELECTRONICS CO LTD., SAMSUNG ELECTRONICS AMERICA INC., AND SAMSUNG TELECOMMUNICATIONS AMERICA LLC**

*/s/ Vincent S. Lam*
*(with permission by Diane V. DeVasto)*
David L. Alberti
david.alberti@dlapiper.com
M. Elizabeth Day
elizabeth.day@dlapiper.com
William G. Goldman
bill.goldman@dlapiper.com
DLA Piper Rudnick Gray Cary US LLP
2000 University Ave
East Palo Alto, CA 94303
650/833-2000
Fax: 650/833-2001

John M. Guaragna
John.Guaragna@dlapiper.com
DLA Piper Rudnick Gray Cary
1221 S MoPac Expressway
Suite 400
Austin, TX 78746
512/457-7125
Fax: 512/457-7001

Vincent S. Lam
vincent.lam@dlapiper.com
DLA Piper US LLP - San Diego
401 B Street, Suite 1700
San Diego, CA 92101
650/699-2867
Fax: 650/699-2701

**ATTORNEYS FOR DEFENDANT PALM INCORPORATED**


*/s/ Tyler T. VanHoutan*
*(with permission by Diane V. DeVasto)*
Peter John Chassman
chassmanp@howrey.com
Tyler T. VanHoutan
vanhoutant@howrey.com
Howrey LLP
1111 Louisiana
25th Floor
Houston, TX 77002
713-787-1400
Fax: 713-787-1440

Harry Lee Gillam, Jr.
Gillam & Smith, LLP
303 South Washington Avenue
Marshall, TX 75670
903-934-8450
Fax: 903-934-9257
Email: gil@gillamsmithlaw.com

**ATTORNEYS FOR DEFENDANTS RESEARCH IN MOTION LTD. AND RESEARCH IN MOTION CORPORATION**

*/s/ Jonathan M. James*
*(with permission by Diane V. DeVasto)*
David John Palmer
dpalmer@perkinscoie.com
Jonathan M. James
jjames@perkinscoie.com
Mark E. Strickland
mstrickland@perkinscoie.com
Perkins Coie Brown & Bain
2901 North Central Avenue
Suite 2000
Phoenix, AZ 85012
602-351-8488
Fax: 602-648-7036

Eric Hugh Findlay
efindlay@rameyflock.com
Ramey & Flock
100 East Ferguson, Ste. 500
Tyler, TX 75702
903/597-3301
Fax: 9035972413

**ATTORNEYS FOR DEFENDANTS HIGH
TECH COMPUTER CORPORATION AND
HTC AMERICA, INC.**

*/s/ Robert W. Adams*
*(with permission by Diane V. DeVasto)*
Robert W. Adams
rwa@nixonvan.com
Updeep S. Gill
USG@nixonvan.com
Nixon & Vanderhye, PC
901 North Glebe Road
11th Floor
Arlington, VA 22203
703/816-4009
Fax: 703/816-4100

Melvin R. Wilcox, III
Yarbrough - Wilcox, PLLC
100 E. Ferguson, Suite 1015
Tyler, TX 75702
903.595.1133
Fax: 903.595.0191
Email: mrw@yw-lawfirm.com

**ATTORNEYS FOR DEFENDANTS SHARP
CORPORATION AND SHARP
ELECTRONICS CORP.**


*/s/ Matthew J. Brigham*
*(with permission by Diane V. DeVasto)*
Diane V. DeVasto
State Bar No. 05784100
dianedevasto@potterminton.com
Michael E. Jones
mikejones@potterminton.com
POTTER MINTON
A Professional Corporation
110 N. College, Suite 500
Tyler, Texas 75702
Telephone:  903/597-8311
Facsimile:  903/593-0846

Matthew J. Brigham
mbrigham@cooley.com
Thomas J. Friel, Jr.
tfriel@cooley.com
Timothy S. Teter
teterts@cooley.com
Cooley Godward Kronish LLP - Palo Alto
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306-2155
650/843-5000
Fax: 650/857-0663

**ATTORNEYS FOR DEFENDANTS
NINTENDO CO. LTD. AND NINTENDO OF
AMERICA**

## CERTIFICATE OF CONFERENCE

Undersigned counsel hereby certifies that counsel for Defendants have complied with Local Rule CV-7(h), and counsel for Plaintiff indicated that Plaintiff is opposed to this Motion. The parties' meet and confer was conducted July 9, 2008 in person with counsel for Defendants, Peter Chassman and Diane DeVasto, and counsel for Plaintiff, Thomas John Ward, Jr.  No agreement regarding the relief sought in this Motion could be reached, and the meet and confer conclusively ended in an impasse, leaving an open issue for the Court to resolve.

*/s/ Diane V. DeVasto*

## CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2008, all counsel of record who have consented to electronic service are being served with a copy of Defendant's Opposition To Plaintiff's Motion For Entry Of A Protective Order And Cross Motion For Entry Of Defendant's Protective Order via the Court's CM/ECF system in compliance with Local Rule CV-5(a)(3).  Any other counsel of record will be served by facsimile transmission and/or first class mail.

*/s/ Diane V. DeVasto*