# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF TEXAS

## TYLER DIVISION

| | | |
|---|---|---|
| SAXON INNOVATIONS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 6:07-cv-00490-LED |
| | ) | |
| NOKIA CORP., ET AL., | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF SAXON INNOVATIONS, LLC'S OPPOSITION TO DEFENDANTS'
JOINT NOTICE OF MOTION AND MOTION FOR SUMMARY ADJUDICATION
OF INVALIDITY OF CLAIM 1 OF U.S. PATENT NO. 5,247,621**

# **TABLE OF CONTENTS**

Page

I.     INTRODUCTION ................................................................................................... 1

II.    RESPONSE TO DEFENDANTS' STATEMENT OF THE ISSUE TO BE
       DECIDED BY THE COURT ................................................................................. 4

III.   LEGAL STANDARD ............................................................................................ 5

       A.     Summary Judgment ................................................................................... 5

       B.     Indefiniteness ............................................................................................ 5

IV.    FACTS ................................................................................................................... 7

       A.     Introduction To The '621 Patent ............................................................... 7

       B.     Disputed Issues Of Material Fact ............................................................ 14

V.     ARGUMENT ....................................................................................................... 16

       A.     Claim 1 of the '621 Patent is Valid Because One Skilled in the Art Would
              Know and Understand From the Specification the Structure Corresponding
              to the Means Limitation that is Claimed. ................................................ 16

              1.     The '621 Patent Discloses Structure Internal to the CPU. ................... 17
              2.     The Portion of the CPU that Generates a Signal that Controls the
                     Bus Interface Unit Is Directly Related to the Ability of the CPU to
                     Continue to Operate Out of Internal Memory – Precisely the
                     Function to Which Claim 1 is Directed ................................................ 19

VI.    CONCLUSION .................................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) .................................................................................................... 5

*Atmel Corp. v. Information Storage Devices, Inc.*,
   198 F.3d 1374 (Fed. Cir. 1999) ............................................................................. 7, 17

*Biomedino, LLC v. Waters Techs. Corp.*,
   490 F.3d 946 (Fed. Cir. 2007) ..................................................................... 3, 4, 6, 16

*Budde v. Harley-Davidson, Inc.*,
   250 F.3d 1369 (Fed. Cir. 2001) ........................................................................ 3, 7, 16

*Cardiac Pacemakers, Inc. v. St. Jude*,
   296 F.3d 1106 (Fed. Cir. 2002) .................................................................................. 18

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) .................................................................................................... 5

*Default Proof Credit Card Sys., Inc.  v. Home Depot USA, Inc.*,
   412 F.3d 1291 (Fed. Cir. 2005) .................................................................................. 18

*Finistar Corp. v. The Direct TV Group, Inc.*,
   523 F.3d 1323 (Fed. Cir. 2008) .................................................................................. 18

*In re Dossel*,
   115 F.3d 942 (Fed. Cir. 1997) ............................................................................. 6, 7, 17

*Intellectual Property Development, Inc. v. UA-Columbia Cablevision of West Chester*,
   *Inc.*, 336 F.3d 1308 (Fed. Cir. 2003) .......................................................................... 6

*Invitrogen Corp. v. Biocrest Mfrg., L.P.*,
   424 F.3d 1374 (Fed. Cir. 2005) ................................................................................... 7

*Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) .................................................................................................... 5

*Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*,
   370 F.3d 1354 (Fed. Cir. 2004) ................................................................................... 6

*Proveris Scientific Corp. v. Innovasystems, Inc.*,
   536 F.3d 1256 (Fed. Cir. 2008) ................................................................................... 4

**Page(s)**

*Rosales v. City of San Antonio,*
    2001 WL 674201 (W.D. Tex. 2001) ................................................................. 4

*TGIP, Inc. v. AT&T Corp.,*
    512 F. Supp. 2d 727 (E.D. Tex. 2007) ........................................................... 2

*Ultra-Tex Surfaces v. Hill Bros. Chem. Co.,*
    204 F.3d 1360 (Fed. Cir. 2000) .................................................................. 3, 7

*University of Rochester v. G.D. Searle & Co., Inc.,*
    358 F.3d 916 (Fed. Cir. 2004) ........................................................................ 7

STATUTES

35 U.S.C. § 112, ¶ 2 ................................................................... 5, 6, 7, 17

35 U.S.C. § 112, ¶ 6 ....................................................................... 1, 5, 6

35 U.S.C. § 282 ................................................................................... 2, 7

OTHER AUTHORITIES

Fed. R. Civ. P. 56(e)(2) ........................................................................... 5

Local Rule CV-56 ............................................................................... 3, 14

## I.    INTRODUCTION

Defendants' motion for summary judgment of invalidity of Claim 1 of U.S. Patent No. 5,247,621 (the "'621 Patent") (Ex. A) should be denied because there are genuine issues of material fact regarding how one of ordinary skill would understand the '621 Patent's disclosure.[1]  Specifically, Defendants' motion fails because the specification of the '621 Patent does in fact disclose, to a person skilled in the art, structure corresponding to the means-plus-function element in Claim 1 "means internal to said central processing unit for allowing operation of said central processing unit using said internal memory during time periods in which said central processing unit does not require use of said bus"' as is required by 35 U.S.C. § 112, ¶ 6.

The '621 Patent describes and claims a system for improving processor performance by allowing a CPU to operate out of internal memory during times when it does not require use of an external bus.  As the '621 Patent explains, prior art CPUs would go into a hold state when they relinquished control of the external bus.  It was necessary for the CPU to go into a hold state to avoid conflicts between, for example, the CPU and peripheral devices that would occur if both the CPU and peripheral device attempted to use the external bus at the same time.  The '621 Patent describes an improved CPU that would include circuitry to issue control signals to turn off the CPU's access to the external bus.  If the CPU's access to the external bus was left on, then even internal memory access would generate traffic on the

---

[1]  Defendants Sharp Corporation and Sharp Electronics Corporation did not formally join in the motion.

external bus, as it is connected to the internal bus.  By turning its access to the external bus

off, the CPU is able to use the internal bus to operate out of internal memory without conflict.

Defendants' brief rests on two factually unsupported conclusions.  First, Defendants

contend that the specification of the '621 Patent does not disclose "any structure" that is

"internal to said central processing unit."  Defs. Br. at 8-9.  Second, apparently realizing that

the logic internal to the CPU for generating a control signal is in fact disclosed to a person of

ordinary skill, Defendants feign confusion and argue that this disclosed structure is not

"clearly linked to the claimed function."  Defs. Br. at 1.

It is Defendants' burden to establish a *prima facie* showing of invalidity by clear and

convincing evidence.  *TGIP, Inc. v. AT&T Corp.*, 512 F. Supp. 2d 727, 731 (E.D. Tex. 2007).

This showing must be sufficient to overcome the statutory presumption of validity under 35

U.S.C. § 282.  Defendants have not met this burden for at least the following reasons:

First, contrary to the conclusory assertions in Defendants' brief, a person of ordinary

skill in the relevant art would understand that the structure that corresponds to the means-

plus-function element "means internal to said central processing unit for allowing operation of

said central processing unit using said internal memory during time periods in which said

central processing unit does not require use of said external bus'" is disclosed in the '621

Patent.  Specifically, Saxon, through the accompanying declaration of its expert, Dr. Andrew

Wolfe ("Wolfe Dec.") (Ex. B), has set forth detailed facts demonstrating that those skilled in

the art would know and understand the specification of the '621 Patent to disclose logic

internal to the CPU for generating control signals that corresponds to this means-plus-function

element claimed in Claim 1.  Summary judgment is therefore inappropriate here because, at

the very least, there are genuine issues of material fact as to whether a person of ordinary skill

in the art would understand the '621 Patent's specification to disclose the corresponding

structure. Defendants have thus failed to prove invalidity by the requisite clear and

convincing evidence. *See Ultra-Tex Surfaces v. Hill Bros. Chem. Co.*, 204 F.3d 1360, 1367

(Fed. Cir. 2000) (concluding facts supporting holding of invalidity must be proved by clear

and convincing evidence); *see also Budde v. Harley-Davidson, Inc.*, 250 F.3d 1369, 1376

(Fed. Cir. 2001) (same).

Second, Defendants' conclusion that no such structure is disclosed is supported only

by attorney argument. They provide no evidence that one of ordinary skill in the art would

fail to understand that the specification discloses the corresponding structure. This should be

fatal to their motion, as the proper inquiry, as Defendants themselves acknowledge, is whether

one of ordinary skill in the art would know and understand the specification to disclose the

corresponding structure. *See Biomedino, LLC v. Waters Techs. Corp.*, 490 F.3d 946, 950

(Fed. Cir. 2007) (stating interpretation of what is disclosed in specification must be made in

light of knowledge of one skilled in the art); Defs. Br. at 3.

Finally, Defendants failed to provide a "Statement of Undisputed Material Facts" with

their brief as required by Local Rule CV-56(a), despite the fact that Saxon twice gave

Defendants an opportunity to cure this deficiency.[2]  That Defendants were unable or

---

[2]  Saxon twice asked Defendants to provide an amended brief to include an enumerated statement of
the material facts Defendants contend are undisputed, explaining that Saxon's ability to respond to this
motion was hindered without such a statement. Twice Defendants refused, even though Saxon agreed
not to seek additional time to oppose the motion if Defendants would provide their statement by the
close of business on Friday, June 5, 2009. Defendants contend their motion "fully complies" with the
requirements of the local rule because page 2 of their brief contains a statement that "the specification
discloses no structure corresponding to the means-plus-function element 'means internal to said
central processing unit. . .'" and then cite to their brief's "Factual Background" section as comprising
their statement of undisputed material facts. Saxon respectfully disagrees that this submission

(continued...)

-3-

unwilling to provide such a statement further demonstrates that there are material facts in dispute and is grounds for the denial of Defendants' motion. *See Rosales v. City of San Antonio*, (No. Civ. ASA-00-CA-0144NN) 2001 WL 674201 (W.D. Tex. 2001) (defendants' failure to provide a statement of undisputed material facts can alone serve as grounds for denying their motion for summary judgment).

## II.    RESPONSE TO DEFENDANTS' STATEMENT OF THE ISSUE TO BE DECIDED BY THE COURT

Defendants acknowledge that the Court must consider "whether one of skill in the art would understand the specification itself to disclose the structure, not simply whether that person would be capable of implementing that structure." Defs. Br. at 11, citing *Biomedino, LLC,* 490 F.3d at 951. However, their Statement of the Issue to Be Decided By the Court does not acknowledge that the relevant inquiry turns on what one of ordinary skill in the art would or would not understand the '621 Patent's specification to disclose. Rather, Defendants rely on factually inaccurate and unsupported attorney argument to support their motion. This failure of proof warrants denial of their motion. *See, e.g.*, *Proveris Scientific Corp. v. Innovasystems, Inc.*, 536 F.3d 1256, 1267 (Fed. Cir. 2008) (where subject matter of patent is "sufficiently complex to fall beyond the grasp of an ordinary layperson" expert testimony may be required to establish invalidity).

Properly framed, the genuine issue of material fact in dispute is whether one skilled in the art would know and understand from the specification of the '621 Patent that logic generating a control signal for turning off the bus interface unit is in fact structure

---

(continued...)

complies with the rules. In any event, Defendants' "Factual Background" section contains factual statements that Saxon disputes. *See* Ex. C.

corresponding to the "means internal to said central processing unit for allowing operation of said central processing unit using said internal memory during time periods in which said central processing unit does not require use of said external bus" as claimed in Claim 1.

## III.    LEGAL STANDARD

### A.    Summary Judgment

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). A motion for summary judgment is not appropriate where genuine issues of material facts are present. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (indicating summary judgment will not lie if dispute about material fact is genuine). To defeat a motion for summary judgment, the opposing party must set forth "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). All evidence offered by the non-movant is to be believed and all justifiable inferences are to be drawn in Saxon's favor. *See Anderson*, 477 U.S. at 255.

### B.    Indefiniteness

Under 35 U.S.C. § 112, ¶ 2, a patent's specification "shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." 35 U.S.C. § 112, ¶ 2 (2008). "An element in a claim for a combination may be expressed as a means or a step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." 35 U.S.C. § 112, ¶ 6 (2008).

The requirement to "distinctly" claim means that the claim must have a meaning discernible to one skilled in the art when construed according to correct principles; only when a claim remains "insolubly ambiguous without a discernible meaning after all reasonable attempts at construction" must a court declare it indefinite. *Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1366 (Fed. Cir. 2004). The same analysis applies when determining whether a § 112, ¶ 6 means-plus-function limitation is sufficiently definite under § 112, ¶ 2. *See In re Dossel*, 115 F.3d 942, 946-47 (Fed. Cir. 1997).

A determination that a patent claim is invalid for failure to meet the definiteness requirement of 35 U.S.C. § 112, ¶ 2 is a legal conclusion that is drawn from the court's performance of its duty as the construer of the patent claims, and therefore, like claim construction, is a question of law. *See Intellectual Property Development, Inc. v. UA-Columbia Cablevision of West Chester, Inc.*, 336 F.3d 1308, 1318 (Fed. Cir. 2003). Once a court concludes that a claim limitation is a mean-plus-function limitation, the court must first identify the function of the limitation, and then look to the specification and identify the corresponding structure for that function. *Biomedino, LLC*, 490 F.3d at 950.

In determining whether the specification discloses sufficient structure, the court must consider "whether one of skill in the art would understand the specification itself to disclose the structure, not simply whether that person would be capable of implementing that structure based on their knowledge or skill." *Id.* at 951. If one skilled in the art would be able to identify the structure, material or acts from the description in the specification for performing the recited function, then the requirements of 35 U.S.C. § 112, ¶ 2 are satisfied. *See In re Dossel*, 115 F.3d at 946-947 (concluding under authority of § 112, ¶ 6, adequate description of structure, material, or acts corresponding to means limitation satisfies claiming requirement

of § 112, ¶ 2). The disclosure of the structure (or material or acts) may be implicit or inherent in the specification if it would have been clear to those skilled in the art what structure (or material or acts) corresponds to the means-plus-function claim limitation. *See Atmel Corp. v. Information Storage Devices, Inc.*, 198 F.3d 1374, 1380 (Fed. Cir. 1999) (stating § 112, ¶ 6 only requires sufficient disclosure so one can readily ascertain what claim means and comply with particularity requirement of § 112, ¶ 2); *In re Dossel*, 115 F.3d at 946-947.

The claims of a patent are afforded a statutory presumption of validity. *See* 35 U.S.C. § 282. This presumption may only be overcome by clear and convincing evidence supporting a finding of invalidity. *Ultra-Tex*, 204 F.3d at 1367. Thus, a challenge to a claim containing a means-plus-function limitation as lacking structural support requires a finding, by clear and convincing evidence, that the specification lacks disclosure of sufficient structure as would be understood by one skilled in the art. *Budde,* 250 F.3d at 1376-77 (finding district court's failure to apply the clear and convincing standard in assessing party's assertion that a means-plus-function limitation lacked structural support erroneous); *University of Rochester v. G.D. Searle & Co., Inc.*, 358 F.3d 916, 920 (Fed. Cir. 2004) (party seeking to invalidate a patent at summary judgment must submit clear and convincing evidence to overcome the statutory presumption of validity); *Invitrogen Corp. v. Biocrest Mfrg., L.P.,* 424 F.3d 1374, 1378 (Fed. Cir. 2005) (in the context of summary judgment, as elsewhere, overcoming presumption of validity requires a showing of facts proved by clear and convincing evidence).

## IV.    FACTS

### A.    INTRODUCTION TO THE '621 PATENT

The '621 Patent relates to microprocessor architecture and, more specifically, to methods and systems for microprocessor bus control resulting in increased processor

efficiency. This type of improved processor is typically employed in consumer electronics devices including phones, televisions and various wireless communications devices. One manner of increasing processor efficiency is to allow the central processing unit (or "CPU") to continue operating out of internal memory when the external bus that connects the CPU to its external memory is not available. This technique increases processor efficiency by allowing the CPU to continue operation when it would otherwise stall or go into a "hold" state.

The '621 Patent describes the prior art as "replete with computing systems including a processor, a system memory, and a bus interconnecting the processor, and the system memory." '621 Pat., l:11-14. The '621 Patent further describes the prior art as "replete with computing systems that include peripheral devices [such as direct memory access ("DMA") controllers] in addition to the processor, memory and bus mentioned above, which peripheral devices effect access to the system memory by temporarily assuming control of the bus." *Id.* at 1:14-20. The '621 Patent identifies "[a] shortcoming and deficiency of the above-described types of systems [that] relates to efficiency of processor operation during time periods in which a peripheral device has control of the system bus. Heretofore during time periods in which the processor has not had control of the bus it has been in a "hold" or "off" state. Thus, when not in control of the system bus, prior art processors effectively accomplish no work." '621 Pat., 1:31-39.

Thus there was a need for a system and method that would allow the CPU to operate when the bus was not available. The invention of the '621 Patent solves the shortcomings and deficiencies of the prior art by introducing an improved system and method for the use of a

processor bus that does not require the processor to suspend operation when its external bus is not available. '621 Pat., 1:64-68.

More specifically, the '621 Patent describes a single chip microprocessing system that has a CPU, internal memory (RAM (36) and ROM (34)) and external memory (32):



FIG. 3

Wolfe Dec. at ¶ 16.  Figures 2 and 3 of the '621 Patent illustrate that the CPU (30) accesses

internal memory, (34) and (36) in Figures 2 and 3, as well as external memory (32) in Figures

2 and 3.  *Id.* at ¶ 16.  The '621 Patent also describes both an internal bus (labeled "internal

bus" in Figures 2 and 3) and an external bus (22), labeled "external bus" in Figures 2 and 3:



*Id.* at ¶ 17.

When the CPU needs to access memory, it sends signals, which may include either a

read or write strobe, to both the internal and external memory.  *Id* at ¶ 18.  *See also,* '621

Pat., 3:28-64.  As illustrated above in green, these read and write strobes traverse both the

internal and external busses.  *Id.* at ¶ 18.  Depending upon the address of the memory access,

the data will be read from or written to either internal or external memory.  *Id.* at ¶ 18.

The patent explains that, under certain circumstances, a peripheral device may also need to access the external memory. '621 Pat., 1:21-30; 5:25-34. As explained in the patent, the CPU of the '621 Patent includes circuitry for processing requests for a bus grant and executing associated programming instructions. Wolfe Dec. at ¶ 19. For example, if a peripheral device wishes to access the external memory to perform its own function, the CPU receives a request for a bus grant and can grant access to the peripheral device. *Id.* at ¶ 19.



FIG. 2

As described in the '621 Patent, prior art processors would enter a hold state after relinquishing the external bus, because the peripheral device would be using the external bus. *Id.* at ¶ 19; '621 Pat., 5:35-59. The '621 Patent describes an improved CPU that retains the ability to operate in a conventional manner when external memory accesses are required by the CPU, but also includes structure to allow the use of only the internal bus when a peripheral device requires the use of external memory and the CPU requires only internal memory accesses and therefore does not require use of the external bus. Wolfe Dec. at ¶ 21. As the patent explains "[t]his can be accomplished because there is no conflict regarding need for or use of the [external] bus 22." '621 Pat., 6:2-11.



FIG. 3

In order to address this issue, the '621 Patent describes the use of control signals generated by circuitry internal to the CPU to turn the bus interface unit 38 off as needed. Wolfe Dec. at ¶ 19; '621 Pat., 6:34-43.  As illustrated in Figure 2 above, the '621 Patent describes a control signal, which may consist of the bus grant signal, that can be passed over line 44 (highlighted in yellow) to turn off the bus interface unit 38.  The bus interface unit generates cycles on the external bus, thereby allowing data to pass from the CPU to external memory.  By turning bus interface unit 38 off, the processor will no longer generate cycles on the external bus.  Wolfe Dec. at ¶ 19.  When the bus interface unit is turned off, the CPU can perform a memory access to internal memory without sending a strobe out over the external bus.  *Id.* at ¶ 19.  As illustrated above in Figure 3, the peripheral device may use the external memory (an external access illustrated in blue) while the CPU may simultaneously use the

internal memory (an internal access illustrated in green). The control signal that turns off bus interface unit (38) therefore allows the CPU to operate from internal memory during time periods in which the CPU does not require use of the external bus. *Id.* at ¶ 19. Thus, with the bus interface unit in the "off" mode, the CPU is only using the internal bus to access the internal memory to continue its operation. *Id.* at ¶ 19; '621 Pat., 6:14-29. When the peripheral device is finished using the external memory, the CPU can issue a control signal to turn the bus interface unit back on, thereby generating cycles on the external bus and allowing the CPU to access both internal and external memory over the internal and external bus. Wolfe Dec. at ¶ 19.

The '621 Patent discloses the logic within the CPU for determining when the control signal to bus interface unit (38) should be on and when it should be off. *Id.* at ¶ 20. For example, the patent discloses that the bus grant signal carried on lines (28) and (44) can be the control signal that performs the claimed function. *Id.* at ¶ 20; '621 Pat., 6:38-43. This bus grant signal is turned on when DMA controller (24) has requested the external bus and the CPU is done using the external bus. Wolfe Dec at ¶ 20; '621 Pat., 6:14-27. At other times, the bus grant signal is off. Wolfe Dec. at ¶ 20. For a simple digital logic circuit such as this, specifying the logical conditions for turning the signal on and the logical conditions for turning the signal off would adequately disclose the structure to a person of ordinary skill in the art. *Id.* at ¶ 20. This simple logic circuit, disclosed as internal to the CPU, is fully specified by the conditions disclosed in the specification. *Id.* at ¶ 20.

As shown by the discussion above, the '621 Patent discloses structure internal to the CPU that performs the function of allowing operation of the CPU using the internal memory during time periods in which the CPU does not require use of the external bus. *Id.* at ¶ 21.

The '621 Patent specifically states that a control signal turns the bus interface unit (38) off. *Id.* at ¶ 21; '621 Pat., 6:38-41.  The CPU's grant of a bus request results in the bus interface unit being turned off.  Wolfe Dec. at ¶ 21; '621 Pat., 6:41-43.  This is directly related to the ability of the CPU to continue to operate out of internal memory, which is precisely to what Claim 1 is directed.  Wolfe Dec. at ¶ 21.  Additional structure in the CPU that tells the CPU to operate out of internal memory is not required by Claim 1.  *Id.* at ¶ 21.

Nevertheless, such additional structure in the CPU is in fact discussed in the '621 Patent specification.  *Id.* at ¶ 22.  For example, the '621 Patent discusses the logic by which the CPU operates either out of internal memory or external memory.  *Id.* at ¶ 22; '621 Pat., 4:1-38.  Furthermore, the specification indicates that this structure is based on the well-known 8051 architecture ('621 Pat., 2:24-64) and thus one of ordinary skill would have been familiar with this structure as disclosed in the specification.  Wolfe Dec. at ¶ 22.  Thus, for all of these reasons, one of ordinary skill in the art would have understood the specification of the '621 Patent itself to disclose the structure for allowing operation of the CPU using internal memory during time periods in which the CPU does not require use of the external bus, as claimed in Claim 1.  *Id.* at ¶ 23.

## B.    DISPUTED ISSUES OF MATERIAL FACT

As noted above, Defendants did not file a Statement of Undisputed Material Facts as required by L.R. CV-56(a) with their motion.  *See supra* at 3; fn.2; Ex. C.  In response to Saxon's requests that Defendants amend their brief to include the requisite statement, Defendants asserted that the statements appearing in the "Factual Background" section of their brief provide Saxon with a "statement of undisputed material facts."  *See id.*  While Saxon continues to disagree that this satisfies the requirements of the rule, at least the

following statements contained in this section of Defendants' brief are disputed which precludes summary judgment:

First, as detailed above, the specification discloses to one of ordinary skill in the art, a logic circuit that generates control signals to turn bus interface unit (38) on and off. The specification further links that structure to the claimed function of allowing the CPU to operate using its internal memory during time periods in which the CPU does not require use of the external bus. Wolfe Dec. at ¶¶ 19-22. This factual dispute alone warrants denial of Defendants' motion.

Second, Defendants' brief asserts that the patent teaches that in prior art systems, the "microprocessor, in particular the CPU portion of the microprocessor, would control access to the external memory and would have sole control of the bus." Defs. Br. at 5. This is wrong. The patent does not teach that the microprocessor would have sole control of the bus. Wolfe Dec. at ¶ 24. In fact, the specification teaches that there are "time periods in which a peripheral device *has control* of the system bus" ('621 Pat., 1:34-35 (emphasis added)) and also "time periods in which the processor *has not had control* of the bus." '621 Pat., 1:35-36 (emphasis added)); Wolfe Dec. at ¶ 24.

Third, Figure 2 of the '621 Patent includes a bus interface unit (38), in addition to other elements. *Id.* at ¶ 24. Defendants represent that the bus interface unit is an "optional" element of Figure 2. Defs. Br. at 6. Defendants' assertion that this figure "'may also' include a bus interface unit 38" (Defs. Br. at 6) misrepresents what the specification says and is factually inaccurate. Wolfe Dec. at ¶ 24. Figures 2 and 3 both disclose bus interface unit (38). *Id.* at ¶ 24. One of ordinary skill would fully understand the structure and function disclosed in Figures 2 and 3 and the accompanying text to include bus interface unit (38). *Id.*

at ¶ 24.  The disclosure of bus interface unit 38 as well as the other disclosures in the specification are adequate to identify to one of ordinary skill in the art at least one disclosed embodiment of Claim 1.  *Id.* at ¶ 24.

While Defendants have failed to specify which facts they contend are material, there are plainly factual issues that must be resolved at trial.

## V.     ARGUMENT

### A.     Claim 1 of the '621 Patent is Valid Because One Skilled in the Art Would Know and Understand From the Specification the Structure Corresponding to the Means Limitation that is Claimed.

As shown herein, the structure that corresponds to the function claimed in Claim 1 is disclosed in the '621 Patent's specification, and is directly linked to the claimed function. Defendants fail to meet their burden of proving, by clear and convincing evidence, that one of ordinary skill in the art would not understand the specification to disclose the structure that corresponds to this means limitation of Claim 1.  Indeed, Defendants do not even attempt to meet their burden, and instead rely on unsupported attorney argument characterizing the '621 Patent's disclosure.

It is well settled that determination of "[w]hether or not the specification adequately sets forth the structure corresponding to the claimed function necessitates consideration of that disclosure **from the viewpoint of one skilled in the art**."  *Budde,* 250 F.3d at 1376 (emphasis added).  In determining whether the specification discloses sufficient structure, the court must consider "whether one of skill in the art would understand the specification itself to disclose the structure, not simply whether that person would be capable of implementing that structure based on their knowledge or skill."  *Biomedino, LLC*, 490 F.3d at 951.  If one skilled in the art would be able to identify the structure, material or acts from the description

-16-

in the specification for performing the recited function, then the requirements of 35 U.S.C. § 112, ¶ 2 are satisfied. *See In re Dossel*, 115 F.3d at 946-947 (indicating adequate description of structure, material, or acts corresponding to means limitation satisfies claiming requirement of § 112, ¶ 2).

The law is clear that the §112, ¶6 analysis must be performed from the perspective of a person of ordinary skill in the art. Defendants do not provide any statement from such a person, and therefore fail in proving that the disclosure in the specification is inadequate under the statute. In contrast, Saxon provides the accompanying declaration of Dr. Andrew Wolfe, an expert well qualified to testify as a person of ordinary skill in the art, which explicitly explains how one of ordinary skill would understand the specification of the '621 Patent to disclose the structure that corresponds to the means limitation in Claim 1. *See generally*, Wolfe Dec. More specifically, Dr. Wolfe explains that the specification in fact discloses structure internal to the CPU – a logic circuit that generates a control signal – and directly ties that structure to the claimed function of allowing the CPU to operate using internal memory during time periods when the CPU does not require use of the external bus. Dr. Wolfe's understanding, as set forth in his declaration, is supported by specific facts showing what those skilled in the art would know and understand from the specification to constitute the corresponding structure. *See Atmel Corp.*, 198 F.3d at 1380 (indicating interpretation of what specification discloses as corresponding structure must be made in light of the knowledge of one skilled in the art). The facts set forth in this declaration establish that genuine issues of fact remain for trial.

## 1. The '621 Patent Discloses Structure Internal to the CPU.

Taking Defendants' arguments in turn, first they allege that the '621 Patent discloses "no structure" that is internal to the CPU and that, as a result, Claim 1 is invalid for

indefiniteness.  Defs. Br. at 8.  As further explained herein, this statement – again unsupported by any observations by one of ordinary skill in the art – is simply not accurate.

In his declaration Dr. Wolfe explains that the CPU includes circuitry for processing requests for a bus grant and executing associated programming instructions.  Wolfe Dec. at 19.  In the instance where a peripheral device wishes to access the external memory to perform its own function, the CPU receives a request for a bus grant and can grant access to the peripheral device.  *Id.* at 19.  The '621 Patent describes the use of control signals generated by circuitry *internal to the CPU* to turn the bus interface unit (38) off as needed. *Id.* at 19; '621 Pat., 6:34-43.  The discussion of the logical conditions for generating this signal, which is described and illustrated as generated within the CPU, is in fact a disclosure of structure internal to the CPU.[3]  Thus, as set forth above and in Dr. Wolfe's declaration, a person of ordinary skill in the art would understand that the '621 Patent discloses a structure that is "internal to" the CPU that performs the function recited in Claim 1.[4]

---

[3]  In fact, Defendants themselves refer on the first page of their brief to the control signal as "emanating from the central processing unit."  It is difficult to dispute that by emanating *from the CPU* the signal is not first *within or internal to the CPU*.

[4]  Defendants not only fail to provide any support for their argument from one of ordinary skill in the art, even the cases they cite are inapposite.  In *Default Proof Credit Card Sys*, *Inc. v. Home Depot. U.S.A.*, *Inc.*, 412 F.3d 1291 (Fed. Cir. 2005) the court entered summary judgment of indefiniteness because the specification did not disclose "any" structure corresponding to the means-plus-function claim at issue.  As detailed herein, the '621 Patent's specification discloses the structure corresponding to the means element of Claim 1.  Defendants' reliance on *Cardiac Pacemakers, Inc. v. St. Jude*, 296 F.3d 1106 (Fed. Cir. 2002), is equally misplaced for the same reasons.  Defendants then rely on *Finistar Corp. v. The Direct TV Group, Inc.*, 523 F.3d 1323, 1340-41 (Fed. Cir. 2008) for the proposition that a specification "fails to disclose sufficient structure when it merely restates the function recited in the claim."  Defs. Br. at 3-4, 9 at fn. 4.  The '621 Patent, however, does not merely restate the function recited in the claim but rather discloses the very "logic within the CPU that determines when the control signal to interface unit 38 should be on and when it should be off."  Wolfe Dec. at ¶ 20.

2.     **The Portion of the CPU that Generates a Signal that Controls the Bus Interface Unit Is Directly Related to the Ability of the CPU to Continue to Operate Out of Internal Memory – Precisely the Function to Which Claim 1 is Directed.**

Defendants next allege that the portion of the CPU that generates a signal that controls the bus interface unit has "nothing to do" with the function claimed in Claim 1 of the '621 Patent. Defs. Br. at 9-11. Again, Defendants' unsupported attorney argument is factually wrong and legally insufficient. Dr. Wolfe explains in detail how one of ordinary skill in the art would understand the '621 Patent specifically to tie this control signal to the claimed function. First, Dr. Wolfe explains that the bus interface unit generates cycles on the external bus. Wolfe Dec. at ¶ 19. When the CPU requires access to the external memory, it uses both the internal and external bus because they are connected. When a peripheral device needs access to the external memory, and the CPU no longer requires such access, the CPU issues a bus grant signal. This bus grant signal is an example of a control signal that turns the bus interface unit 38 off. Wolfe Dec. at ¶ 20; '621 Pat., 6:38-43. Because the bus interface unit is turned off, and is not generating cycles on the external bus, the CPU can use only the internal bus to access internal memory when it does not require use of the external bus. If the bus interface unit were on, the memory access would go out over both the internal and external bus, even if use of the external bus was not required. In summary, Dr. Wolfe goes on to explain that one of ordinary skill in the art would understand that this is directly related to the ability of the CPU to continue to operate out of internal memory and that this is precisely the function to which Claim 1 is directed. Wolfe Dec. at ¶ 20-23. Thus, again, as set forth herein and detailed extensively in Dr. Wolfe's declaration, a person of ordinary skill in the art would understand, based on the specification of the '621 Patent, that the portion of the CPU

generating a signal that controls the bus interface unit directly correlates and is necessary to perform the function claimed in Claim 1.

## VI.     CONCLUSION

For all of the reasons above, the Declaration of Dr. Andrew Wolfe (Ex. B) is sufficient to uphold the validity of Claim 1 of the '621 Patent because, at the very least, it presents triable issues of fact that defeat Defendants' motion.  Saxon therefore respectfully requests that summary judgment in favor of Defendants be denied.

WHEREFORE, PREMISES CONSIDERED, the parties request this Court to deny Defendants' motion.

June 12, 2009                                              Respectfully submitted,

                                                          William D. Belanger
                                                          BBO# 657184
                                                          belangerw@pepperlaw.com
                                                          Michael T. Renaud
                                                          BBO# 629783
                                                          renaudm@pepperlaw.com
                                                          Ibrahim M. Hallaj
                                                          BBO# 661333
                                                          hallaji@pepperlaw.com
                                                          Aaron J. Levangie
                                                          BBO# 652052
                                                          levangiea@pepperlaw.com
                                                          (All admitted *pro hac vice*)
                                                          Alexandra C. Fennell
                                                          BBO#65892
                                                          fennella@pepperlaw.com
                                                          (Admitted)
                                                          **PEPPER HAMILTON LLP**
                                                          15th Floor, Oliver Street Tower
                                                          125 High Street
                                                          Boston, Massachusetts 02110-2736
                                                          Telephone:  (617) 204-5100
                                                          Facsimile:  (617) 204-5150

T. John Ward, Jr.
State Bar No. 00794818
**WARD & SMITH LAW FIRM**
111 W. Tyler Street
Longview, Texas   75601
Telephone:   (903) 757-6400
Facsimile:   (903) 757-2323
E-mail:   jw@jwfirm.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  Therefore, this document was served on all counsel who are deemed to have consented to electronic service.  Local Rule CV-5(a)(3)(A). Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email on this 12th day of June, 2009.

_____
T. John Ward, Jr.