IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| SAXON INNOVATIONS, LLC, <br><br> PLAINTIFF, <br><br> V. <br><br> NOKIA CORP., *et al.*, <br><br> DEFENDANTS. | CIVIL ACTION NO. 6:07-cv-490-LED-JDL <br><br> JURY TRIAL DEMANDED |

**DEFENDANTS' OBJECTIONS TO AND MOTION FOR RECONSIDERATION
OF THE CONSTRUCTION OF THE CLAIMS OF
<u>U.S. PATENT NOS. 5,502,689, 5,592,555 AND 5,771,394</u>**

Defendants Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung Telecommunications America, LLC, Palm, Inc., Research In Motion Ltd., Research In Motion Corporation, Nintendo Co., Ltd., and Nintendo of America Inc. (collectively "Defendants") hereby respectfully object to, and move for reconsideration of, certain of the claim constructions for U.S. Patent Nos. 5,502,689, 5,592,555 and 5,771,394 entered by the Magistrate Judge in his July 30, 2009 Order. *See* 28 U.S.C. § 636(b)(1)(A); Fed R. Civ. P. 72(a); E.D. Texas Local Rules, Appendix B, Rule 4(A).

## I. OBJECTIONS TO THE COURT'S CONSTRUCTIONS FOR THE DISPUTED TERMS OF THE '689 PATENT

### A. "disable request signal"

| Disputed Term | Saxon's Proposal | Defendants' Proposal | Court's Construction |
|---|---|---|---|
| **"disable request signal"** Claims 5, 8 | a signal to initiate entry into a shut-down mode | a signal that requests the system to stop the output clock signal and that starts the predetermined length of time | a signal requesting the system enter into shut-down mode |

Defendants object to the Court's construction of the term "disable request signal" and request reconsideration of Defendants' proposed construction for each of the reasons set forth in Defendant's Response Brief. *See* Brief, Docket Entry No. ("DE") 272, at 1-4. Defendants' construction was rejected and the Court's construction of this term was adopted in part because the Court determined that the specification adequately defined shut-down mode. (Order, DE 311, at 9.) Accordingly, the Court's claim construction analysis focused on the potential ambiguity of Saxon's proposal concerning the phrase "initiate entry into" shut-down mode. The Court's reference to the clear description of shut-down mode in the specification demonstrates that the Court's rejection of Defendants' proposed construction —which is faithful to that description — is erroneous and should be reconsidered.

The signal consistently described in the specification in connection with the request to enter shut-down mode is SDENTR, which is described as a "request to enter shut-down mode":

> The shut down control circuit 12 may be responsive to signals SDEXIT received on line 28, the assertion of which indicates a request to exit shutdown, and **SDENTR received on line 30, the assertion of which indicates a request to enter shut-down mode**.

'689 patent, col. 6:43-47 (emphasis added); *see also* col. 8:10-13 ("Upon [verification], the SDENTR signal may be asserted on line 30 signaling a request to enter the shut-down mode."). In this and every other place in the specification, the signal that requests entry into shut-down mode is the SDENTR signal 30. Thus, the disable request signal of the claim is most analogous to, if not coincident with, signal 30.

The request to enter shut-down mode in the specification is inextricably intertwined with the predetermined length of time before the clock is stopped. The use of "disable request signal" in the "Summary of the Invention" demonstrates that the disable request is the triggering event for the predetermined length of time:

> In certain embodiments of the present invention, the step of stopping the at least one output clock signal may include the step of stopping the at least one output clock signal after the predetermined length o [sic] time **following the most recent assertion of the disable request signal**.

'689 patent, col. 4:63-67 (emphasis added); *see also* Claim 8 (mirroring claim language). Moreover, contrary to the Court's analysis in footnote 2, there is clear support in the specification for the relationship between the disable request signal — the signal requesting the system to enter shut-down mode — and the predetermined length of time in the claims:

> Further, the clock generator of the present invention provides a predetermined time delay **from** a request to enter shut-down mode to the disabling of the module clock signals, providing time to prepare the modules for shut-down and to complete any necessary housekeeping routines.

'689 patent, 9:47-51 (emphasis added). This passage is entirely consistent with the purpose of the invention, and with the initial description of the invention quoted above: "The shut-down entry delay timer 14 provides a time delay between a request to enter shut-down mode and the disablement of the oscillator 10. **This time delay may be used to allow one or more of the modules 6 in the electrical system 2 to be programmed to its idle state, or to complete any necessary housekeeping operations.**" '689 patent, 6:57-62 (emphasis added).

Thus, contrary to the Court's ruling, the disable request signal — *i.e.*, the signal requesting entry into shut-down mode — **is** the signal that starts the predetermined length of time. The Court declined to

2

reach this conclusion, stating that "Defendants' interpretation would exclude the figure 1 embodiment, which shows a separate signal initiating the predetermined length of time after signal 48 is verified, from the scope of the claim." (Order, DE 311, at 9.) However, any conflict between Claim 5 and the figure 1 embodiment is caused by how Claim 5 was drafted, not by Defendant's construction of this claim. Unasserted Claim 1 reflects that the specification discloses two distinct signals: a first signal that is verified to ensure that the device will not be inadvertently shut down (*i.e.*, the "shut-down entry request signal"), and a second signal that actually requests the system to enter shut-down mode (*i.e.*, the "disable activation signal"). Nothing in the specification states that the first signal triggers the predetermined length of time — indeed, unless the first signal is verified, the predetermined length of time never begins.

In contrast to Claim 1, Claim 5 mentions only one signal but adds the concept of a "predetermined length of time" to shut down. The only claimed signal requests that the device enter a shut-down mode. As discussed above, the specification and figure 1 make clear that the signal requesting shut-down initiates the predetermined length of time. The problem is that Claim 5 also includes a verification step that is performed on the same signal that requests shut-down. However, the Court should not use the claim construction process to "fix" any disconnect between Claim 5 and the specification of the patent. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 736 (2002) ("What is claimed by the application must be the same as what is disclosed in the specification."); *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1330 (Fed. Cir. 2003) ("The purpose of the written description requirement is to prevent an applicant from later asserting that he invented that which he did not; the applicant for a patent is therefore required to 'recount his invention in such detail that his future claims can be determined to be encompassed within his original creation.' (citation omitted).")

The Court's attempt to "fix" the foregoing written description problem renders the claim indefinite because there is no way to determine when the predetermined length of time begins. The Court

3

states that Claim 5 "recites the steps of (1) receiving a disable request signal, (2) verifying it, and (3) stopping the output clock signal only after the disable signal has been received and verified and a predetermined length of time has elapsed." (Order, DE 311, at 9). Although the Court states that "[t]here is no requirement that the disable request signal must start the predetermined length of time," neither the Court's construction, nor any other limitation in Claim 5, specifies **anything** that starts the predetermined length of time. If the "predetermined length of time" is started by some unclaimed and unspecified subsequent signal, as the Court assumes, rather than the "disable request signal," a person of ordinary skill cannot know when the "predetermined length of time" begins (and ends) according to the invention claimed in Claim 5, thereby making it impossible for an accused infringer to determine when he is, or is not, infringing the claim.

### B.     "predetermined length of time"

| Disputed Term | Saxon's Proposal | Defendants' Proposal | Court's Construction |
|---|---|---|---|
| **"predetermined length of time"** Claims 5, 8 | an amount of time defined prior to or at the time of receipt of the disable request signal | a definite amount of time fixed prior to receipt of the disable request signal | a length of time within a known period |
| **"stopping said at least one output clock signal after a predetermined length of time after receiving said disable request signal"** Claim 5 | halting the output clock signal following an amount of time defined prior to or at the time of receipt of the disable request signal | stopping the output clock signal at the expiration of an amount of time that is fixed prior to, and starts from, receipt of the disable request signal | Not Construed |

Defendants object to the Court's construction of the term "predetermined length of time," and the Court's decision not to construe the term "stopping said at least one output clock signal after a predetermined length of time after receiving said disable request signal," and request reconsideration of Defendants' proposed constructions for each of the reasons set forth in Defendant's Response Brief. *See* Brief, DE 272 at 4-6. The Court's construction of "predetermined length of time," and its refusal to construe the larger "stopping" step, is erroneous because it creates substantial uncertainty about when a particular shut-down meets the requirements of the claim, for a number of reasons.

First, as discussed in the preceding section, if the disable request signal does not start the predetermined length of time to shut down, nothing in the claim defines when the predetermined length of time commences. Assuming a "known period" means a specified range from a minimum to a maximum amount of time, the Court's construction does not clearly indicate when this period starts, or when it ends.[1]

Second, the Court's construction fails to specify when shut-down mode occurs. The Court's construction could be read to include shut down that occurs at some unspecified time following the expiration of the predetermined length of time. The Court's construction is therefore inconsistent with the patent specification, in which shut down occurs **immediately** upon expiration of the predetermined length of time. In the only described embodiment, the clock is shut down upon the receipt of the second clock pulse from the 280.9Hz clock (Fig. 2, line 36) after assertion of the START TIMER signal (which, in turn, is triggered by the assertion of the SDENTR signal on line 30). '689 patent, col. 8:26-48. Depending on when the SDENTR signal is asserted, the second pulse may take almost two full clock cycles, or it may take little more than one clock cycle. *Id.* at col. 7:4-20 and Fig. 2. Regardless of this variability, however, the oscillator 10 and its output clock signal are stopped **immediately** upon the second clock pulse from the 280.9Hz clock.

By declining to construe the larger "stopping" phrase, the Court leaves open the possibility that a clock that is stopped some undefined amount of time following the predetermined length of time could meet the claim requirements. Indeed, the Court's construction could arguably be met even if shut-down occurred five hours following the conclusion of the predetermined length of time (which in the preferred

---

[1] To the extent the Court does not sustain Defendants' objection, Defendants respectfully request that the Court clarify that the predetermined length of time begins **upon verification of the disable request signal** (as the Court has construed disable request signal). This is well-supported by the specification, which states that immediately upon verification of the signal sent on line 48, the SDENTR signal is asserted on line 30, which starts the predetermined length of time. '689 patent, col. 8:33-35 ("The setting of UCCR[7] causes the register access circuit 20 to assert the SDENTR signal on line 30.").

embodiment is only several milliseconds). Such a long delay would obfuscate the very purpose of the invention — reducing power consumption.

The Court's construction turns the predetermined length of time into a **minimum** amount of time delay to shut down, because any time delay equal to, or greater than, the predetermined length to time would satisfy this construction. In its Order, the Court erroneously held that the removal of the term "minimum" during prosecution broadens, not narrows, the scope of Claim 5. (Order, DE 311, at 11). For example, in the disclosed embodiment, a "predetermined minimum amount of time" construction would mean that shut down occurs within 3.56 to 7.12 msecs, or any delay longer than 7.12 msecs. Under the proper "predetermined length of time" construction, shut down must occur between 3.56 and 7.12 msecs, and *not* longer. Such an interpretation is consistent with the intrinsic record and stays true to the invention. The Court's construction effectively and erroneously restores claim coverage that was given up during prosecution.[2]

Finally, the Court's construction — "a length of time within a known time period" – does not specify when the "known time period" is defined. In contrast, Defendants' proposed construction for the "predetermined length of time" properly requires that the predetermined length of time is determined **before** receipt of the disable request signal. This is consistent with the plain language of "predetermined." It is also consistent with claim language specification, which discloses that the number of clock cycles between receipt of the SDENTR signal and clock shut down is set **before** the sending of the disable request signal.

---

[2] The Court's citation of *Omega Engineering, Inc. v. Raytek Corp.*, 334 F.3d 1314 (Fed. Cir. 2003) is inapposite. In *Omega*, the Federal Circuit reversed a district court's claim construction that added an explicit negative limitation to the claim, which was not present on the language of the claim, nor clearly supported in the prosecution history. *Id.* at 1322 ("means for causing said at least one laser beam to strike the periphery of the energy zone, *but not strike the center or interior portion of the energy zone*, for visibly outlining said entire energy zone.") citation omitted; (added negative limitation shown in italics). In *Omega*, the applicant did not amend the claims, but did make arguments during prosecution regarding a related aspect of the invention in order to overcome prior art. In contrast, here the applicants changed the language of the claims during prosecution of the '689 patent.

6

C. **"predetermined protocol requirement" and "verifying that . . ."**

| Disputed Term | Saxon's Proposal | Defendants' Proposal | Court's Construction |
|---|---|---|---|
| **"predetermined protocol requirement"** Claims 5, 8 | a requirement of a defined protection scheme | Defendants contend that this claim is more appropriately construed in the context of the larger claim phrase in which it appears below. | a known set of rules |
| **"verifying that said disable request signal satisfies a predetermined protocol requirement"** Claim 5 | confirming that said disable request signal meets a requirement of a defined protection scheme | confirming that the received disable request signal satisfies a predetermined series of steps | Not Construed |

Defendants object to the Court's construction of the term "predetermined protocol requirement," and the Court's decision not to construe the term "verifying that said disable request signal satisfies a predetermined protocol requirement," and request reconsideration of Defendants' proposed constructions for each of the reasons set forth in Defendant's Response Brief. *See* Brief, DE 272, at 7-8.

II. **OBJECTIONS TO THE COURT'S CONSTRUCTIONS FOR THE DISPUTED TERMS OF THE '555 PATENT**

A. **"signal processing circuit"**

| Disputed Term | Saxon's Proposal | Defendants' Proposal | Court's Construction |
|---|---|---|---|
| **"signal processing circuit"** | a circuit, within a communications controller circuit, that executes program instructions to process communications signals and executes program instructions to encipher or decipher such signals | a signal processor that uses the same circuitry to load, store, and execute signal processing instructions and enciphering algorithms | a circuit that executes program instructions to process communications signals and executes program instructions to encipher or decipher such signals |

Defendants object to the Court's construction of the term "signal processing circuit" and request reconsideration of Defendants' proposed construction for each of the reasons set forth in Defendant's Response Brief. *See* Brief, DE 272, at 15-16. If the Court declines to adopt Defendants' original proposed construction, Defendants request that at a minimum, the Court modify the construction to: "a *processor* that uses the same circuitry to load, store, and execute signal processing instructions and enciphering algorithms." The Court indicated that the inclusion of "signal processor" in Defendants'

7

original proposed construction was improper because "the patent specification contemplates a variety of embodiments" such as digital signal processors and microprocessors. Order, DE 311, at 16. Broadening the construction to include "processors" rather than just "signal processors" would address this concern while at the same time reducing the ambiguity caused by the Court's current construction, as explained below.

Defendants object to the Court's construction for the term "signal processing circuit" as it fails to properly define the "metes and bounds" of the claimed invention and does not give adequate weight to the teachings of the intrinsic evidence. Specifically, a "circuit," as understood by one of ordinary skill in the art, is simply a pathway that allows electric current to flow. *See* IEEE Standard Dictionary of Electrical and Electronic Terms, The Institute of Electric and Electronics Engineers, Inc. (1984), p. 143, relevant pages attached hereto as Exhibit 1 (defining a "circuit" as "[a] conductor or system of conductors through which an electric current is intended to flow"). As such, both parties' technical experts, using the Court's claim construction above, could conceivably "draw a box" as broadly or as narrowly as they wish to define the "circuit." While the Court's construction does require that the "circuit" is one that "executes program instructions to process communications signals and executes program instructions to encipher or decipher such signals," such a qualifier provides only a minimum, and no maximum, boundary for the "signal processing circuit."

The intrinsic evidence of the '555 patent clearly supports the inclusion of "a signal processor," or at a minimum, "a processor" to provide this necessary boundary. Specifically, the only "circuit" referenced in the specification that both processes and enciphers communications signals is a "processor" (whether that "processor" takes the form of a digital signal processor or a general-purpose microprocessor). *See* '555 patent col. 4:39-47; col. 6:52-55 (Ex. C-1 from Defendants' Brief, DE 272); *see also* June 25, 2009 Claim Construction Hearing Transcript at 103:7-10 ("indicat[ing] that the present invention could be implemented in either a DSP or a microprocessor"). While it is typically not appropriate to limit the construction of a claim term to a particular embodiment disclosed in the

8

specification, in situations where the specification or the prosecution history clearly indicates that the invention encompasses no more than a particular structure, the breadth of the claims can extend no further than that particular structure. *See Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1288 (Fed. Cir. 2009); *see also Alloc, Inc. v Int'l Trade Comm'n*, 342 F.3d 1361, 1370 (Fed. Cir 2003) (noting that a court must look to "whether the specification refers to a limitation only as a part of less than all possible embodiments or whether the specification read as a whole suggests that the very character of the invention requires the limitation be a part of every embodiment"). As the only disclosed "circuit" that both processes and enciphers communications signals is a "processor," the construction of the "signal processing circuit" must reflect that fact.

Finally, the Court's construction does not give adequate weight to the prosecution history. Specifically, during the prosecution of the '555 patent, the patent applicant, in differentiating the present invention from the disclosures of the prior art, stated as follows:

> As claimed in Claims 1, 21, and 43, Applicant's invention is patentably distinct over the *Ashby* [prior art] reference in that Applicant's claimed invention implements encryption/decryption as an additional task performed by the signal processing circuit. The *Ashby* reference on the other hand, teaches the use of a separate and distinct device for the purpose of maintaining high-rate encryption data streams. This separate device is the data encryption device 22 of Figure 1 of the *Ashby* reference … The <u>Ashby</u> reference teaches that the data encryption device 22 can be a standard DES encoder such as the one available from TEXAS INSTRUMENTS. The *Ashby* reference <u>does not</u> teach the integration of encryption with a signal processing circuit as required by Claims 1, 21, and 43.

'555 Patent File History, Amendment (July 17, 1996) at 30-31 (Ex. C-2 from Defendants' Brief, DE 272) (emphasis in original). A comparison of Figure 1 of the *Ashby* reference (U.S. Patent No. 5,150, 401) and Figure 3 of the '555 Patent illustrates the distinction made by the patent applicant:

9

 

As shown from the excerpt and the highlighted figures above, the patent applicant specifically relied on the fact that the processing and enciphering steps are integrated into a signal processing circuit in the '555 patent, as opposed to divided into separate devices as shown in the prior art *Ashby* reference. In distinguishing the alleged invention of the '555 patent from the prior art, the patent applicant clearly surrendered a construction of the term "signal processing circuit" that would allow for the processing and enciphering steps to be performed by separate devices (as in the prior art). *See Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003) (noting that the doctrine of prosecution disclaimer "limits the interpretation of claims so as to exclude any interpretation that may have been disclaimed or disavowed during prosecution in order to obtain claim allowance.") (quoting *Standard Oil Co. v. Am. Cyanamid Co.,* 774 F.2d 448, 452 (Fed. Cir. 1985). The Court's claim construction, which does not provide an outer boundary for the "signal processing circuit," and therefore could allow that "circuit" to include effectively everything within the "communication controller circuit," allows Saxon to essentially recapture that which was given up during prosecution – namely, that processing and enciphering can be accomplished by separate devices. Accordingly, for all the reasons discussed above, Defendants' object to the Court's construction for the term "signal processing circuit" and request that the Court reconsider this term and adopt Defendants' original proposed construction or, at a minimum, Defendants' slightly modified construction proposed above.

**B.     "processing (the) … communication(s) signals"**

| Disputed Term | Saxon's Proposal | Defendants' Proposal | Court's Construction |
|---|---|---|---|
| **"processing (the) … communications signals"** | performing a signal processing operation on (the) communication(s) signals | modifying the data to be transmitted prior to enciphering or after deciphering | performing a signal processing operation on (the) communication(s) signals |

Defendants object to the Court's construction of the phrase "processing the communication signals" and request reconsideration of Defendants' proposed construction for each of the reasons set forth in Defendant's Response Brief.  *See* Brief, DE 272, at 17-18.  Defendants' further object to the Court's construction of the phrase "processing the communication signals," as it fails to clearly define the "metes and bounds" of the claimed invention such that the ultimate trier of fact can determine infringement and validity.

The Court, in adopting Saxon's proposed construction, effectively defines the term "processing" as a "signal processing operation."  Such a construction does not sufficiently define what "processing" entails, as it is not clear what specifically would qualify as a "signal processing operation."  In its opening claim construction brief, Saxon claims that "processing" is "a well known term" and that it has an "ordinary meaning." Saxon Br. at 18.  However, Saxon's, and ultimately the Court's construction does not enlighten the ultimate trier of fact as to what that "ordinary meaning" actually is.

In contrast to the Court's construction, Defendants' proposed construction, including the requirement that "processing" include a modification of the data to be transmitted, provides the parties' experts and the ultimate trier of fact with a palpable definition of "processing" (*i.e.* a modification of the data).  As the Court indicated that it was "unable to discern any claim scope dispute with regard to this term" between Plaintiff's and Defendants' proposed constructions (*see* Order, DE 311, at 17), Defendants request that the Court reconsider this term and adopt Defendants' proposed construction.

C. "enciphering (the) (said) processed communication signals"

| Disputed Term | Saxon's Proposal | Defendants' Proposal | Court's Construction |
|---|---|---|---|
| **"enciphering (the) (said) processed communication signals"** | applying an enciphering algorithm to encrypt (the) (said) processed communication signals | applying an enciphering algorithm to the processed communication signals to make the processed communication signals private | applying an enciphering algorithm to encrypt (the) (said) processed communication signals |

Defendants object to the Court's construction of the phrase "enciphering the processed communications signals" and request reconsideration of Defendants' proposed construction for each of the reasons set forth in Defendant's Response Brief. *See* Brief, DE 272, at 18-19. Defendants' further object to the Court's construction of the phrase "enciphering the processed communication signals," as it may be difficult for the ultimate trier of fact to comprehend and to determine infringement and validity.

The Court's construction, which requires the step of "applying an enciphering algorithm to encrypt the processed communication signals," may create confusion for the ultimate trier of fact as it uses the terms "enciphering" and "encrypt" in the same construction, without providing a definition for either. To the contrary, Defendants' proposed construction, which specifically defines the "enciphering" algorithm as one that "make[s] the processed communications signals private," eliminates any such potential confusion. As Defendants proposed construction would be clearer to the ultimate fact finder, Defendants request that the Court reconsider this phrase and adopt Defendants' proposed construction.

D. "programmably selecting an enciphering algorithm"

| Disputed Term | Saxon's Proposal | Defendants' Proposal | Court's Construction |
|---|---|---|---|
| **"programmably selecting an enciphering algorithm"** | executing in a signal processing circuit a set of program instructions to select one of a plurality of enciphering algorithms | executing a set of program instructions to select one from among a plurality of enciphering algorithms | executing in a signal processing circuit a set of program instructions to select one of a plurality of enciphering algorithms |

Defendants object to the Court's construction of the phrase "programmably selecting an enciphering algorithm" and request reconsideration of Defendants' proposed construction for each of the

12

reasons set forth in Defendant's Response Brief.[3] *See* Brief, DE 272, at 19-20. The Court appears to acknowledge that the current construction of this term excludes embodiments of the patent, but then accepts this exclusion in order to comply with Federal Circuit precedent prohibiting it from redrafting claim language. (See Order, DE 311, at 18). The Court's choice is unnecessary and erroneous.

Although the plain language of the claims require that the enciphering must occur within the signal processing unit, it does not require that the programmably selecting limitation take place in any particular location. Parsing the language of the claim element, a reasonable interpretation is that the phrase "in said first signal processing circuit" modifies the earlier clause "enciphering said processed communication signals", rather than the later clause "by programmably selecting an enciphering algorithm." Thus, under this construction, because the selection can occur outside of the signal processing circuit, as long as the actual enciphering occurs within the signal processing circuit, the plain language of the claim is preserved. Moreover, because this approach does not exclude any embodiments of the '555 patent, it is the appropriate construction. *See Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 362 F.3d 1367, 1381 (Fed. Cir. 2004).

E.   **"enciphering algorithm" and "deciphering algorithm"**

| Disputed Term | Saxon's Proposals | Defendants' Proposals | Court's Construction |
|---|---|---|---|
| **"enciphering algorithm"/ "deciphering algorithm"** | a prescribed set of well-defined rules or processes for the solution of a problem in a finite number of steps | a series of steps for encrypting signals/ decrypting signals | a prescribed set of well-defined rules or processes for encrypting signals/ decrypting signals |

Defendants object to the Court's construction of the terms "enciphering algorithm" and "deciphering algorithm" and request reconsideration of Defendants' proposed construction for each of the reasons set forth in Defendant's Response Brief. *See* Brief, DE 272, at 20-21. Defendants further

---

[3] Defendants note, however, that the Court's construction for this phrase, which was originally proposed by Saxon, supports Defendants' contention outlined above that the "signal processing circuit" must be construed as a "processor." Specifically, the Court's claim construction for this phrase requiring that the signal processing circuit "executes … program instructions" denotes that the "circuit" in question must be a "processor," as only a "processor" can "executes program instructions."

object to the Court's constructions for "enciphering algorithm" and "deciphering algorithm" as the Court effectively discarded that portion of the proposed constructions on which the parties agreed. Specifically, the Court's constructions disregard the fact that an algorithm solves a problem in a number of "steps," a requirement that both parties proposed in their respective constructions. If the Court declines to adopt Defendants' original proposed constructions, Defendants request that at a minimum, the Court modify the constructions to: "a prescribed set of well-defined rules or processes for encrypting signals in a finite number of steps" and "a prescribed set of well-defined rules or processes for decrypting signals in a finite number of steps," respectively.

Contrary to the Court's statement in its Memorandum Opinion and Order, the phrase "a finite number of steps" does not define the general purpose of an algorithm (*see* Order, DE 311, at 19). Rather, the general purpose of the algorithm is defined by whether the algorithm is for "encrypting signals" or "decrypting signals." The phrase "a finite number of steps" defines the method in which an "algorithm" accomplishes its general purpose. As such, by omitting the method in which an "algorithm" accomplishes its general purpose, the Court's constructions fail to fully define the term "algorithm."[4] Accordingly, Defendants object to the Court's construction for the terms "enciphering algorithm" and "deciphering algorithm," and request that the Court reconsider these terms and adopt Defendants' original constructions or, at a minimum, the revised constructions offered by Defendants herein.

---

[4] Defendants acknowledge that the Court's construction captures a portion of the method of the "algorithm" by including the phrase "a set of well-defined rules or processes." However, this definition is incomplete, as both Saxon and Defendants recognize that the general purpose of the algorithm must be accomplished in a "finite number of steps."

14

### III. OBJECTIONS TO THE COURT'S CONSTRUCTIONS FOR THE DISPUTED TERMS OF THE '394 PATENT

#### A. "master processor"/"respective indication signal"

| Disputed Term | Saxon's Proposal | Defendants' Proposal | Court's Construction |
|---|---|---|---|
| **"master processor"** Claim 1 | general purpose processor not under control of a signal processor | a general purpose microprocessor, not under the control of a signal processor, that controls the apparatus | general purpose processor not under control of a signal processor |
| **"respective indication signal"** Claim 11 | a respective signal to said master processor so as to indicate to said master processor | a signal generated by a signal processor that instructs the master processor to read that signal processor's exclusive memory | No construction necessary. |

Defendants object to the Court's construction of the terms "master processor" and "respective indication signal" request reconsideration of Defendants' proposed constructions for each of the reasons set forth in Defendant's Response Brief. *See* Brief, DE 272, at 23; 27-29.

#### B. "respective portions of a same memory"

| Disputed Term | Saxon's Proposal | Defendants' Proposal | Court's Construction |
|---|---|---|---|
| **"said plurality of memories comprise respective portions of a same memory"** Claim 12 | said plurality of memories comprise allocated corresponding memory locations of a single memory device | the plurality of memories are respective blocks of a single memory device | said plurality of memories comprise allocated corresponding memory locations of a single memory device |

The Court stated that it "is unable to discern a substantive difference between the parties' proposals. Because Saxon's proposal more closely follows the actual claim language, the Court adopts Saxon's proposed construction . . . ." (Order, DE 311, at 28.) To the extent that Saxon contends that there is a substantive difference between its proposed construction and Defendants', Defendants object to the Court's construction of the phrase "said plurality of memories comprise respective portions of a same memory" and request reconsideration of Defendants' proposed construction for each of the reasons set forth in Defendant's Response Brief. *See* Brief, DE 272, at 29-30.

| | |
|---|---|
| Dated:  August 13, 2009 | Respectfully submitted,<br>By:  /s/ _____<br>Robert Haslam<br>rhaslam@cov.com<br>**COVINGTON & BURLING LLP**<br>333 Twin Dolphin Drive, Suite 700<br>Redwood Shores, CA  94065<br>Tel.: (650) 632-4700; Fax: (650) 632-4800 |
| Eric M. Albritton<br>ema@emafirm.com<br>Attorney at Law<br>P.O. Box 2649<br>Longview, TX 75606<br>Tel.: (903) 757-8449; Fax: (903) 758-7397 | Michael Plimack<br>mplimack@cov.com<br>**COVINGTON & BURLING LLP**<br>One Front Street<br>San Francisco, CA  94111<br>Tel.: (415) 591-6000; Fax: (415) 591-6091 |

**ATTORNEYS FOR DEFENDANTS SAMSUNG ELECTRONICS CO LTD., SAMSUNG ELECTRONICS AMERICA INC., AND SAMSUNG TELECOMMUNICATIONS AMERICA LLC**

*Also submitted with permission on behalf of:*

| | |
|---|---|
| OF COUNSEL:<br><br>Harry L. "Gil" Gillam, Jr.<br>Texas Bar No. 07921800<br>gil@gilliamsmithlaw.com<br>**GILLAM & SMITH, L.L.P.**<br>303 S. Washington Avenue<br>Marshall, TX, 75670-4157<br>Tel.: (903) 934-8450; Fax:  (903) 934-9257 | Peter J. Chassman<br>Texas Bar No. 00787233<br>chassmanp@howrey.com<br>Tyler T. VanHoutan<br>Texas Bar No. 24033290<br>vanhoutant@howrey.com<br>**HOWREY LLP**<br>1111 Louisiana, 25th Floor<br>Houston, Texas 77002<br>Tel.: (713) 787-1400; Fax: (713) 787-1440 |

**ATTORNEYS FOR DEFENDANTS RESEARCH IN MOTION LIMITED<br>and RESEARCH IN MOTION CORPORATION**

| | |
|---|---|
| John M. Guaragna (Bar No. 24043308)<br>john.guaragna@dlapiper.com<br>**DLA PIPER US LLP**<br>1221 S. MoPac Expressway, Suite 400<br>Austin, Texas  78746<br>Tel.: (512) 457-7000; Fax: (512) 457-7001<br><br>Vincent S. Lam (CA Bar No. 229355) (*pro hac vice*)<br>vincent.lam@dlapiper.com<br>**DLA PIPER US LLP**<br>401 B Street, Suite 1700<br>San Diego, CA 92101<br>Tel.: (619) 699-2700; Fax: (619) 699-2701 | M. Elizabeth Day (CA Bar No. 177125) (*pro hac vice*)<br>elizabeth.day@dlapiper.com<br>William G. Goldman (CA Bar No. 203630) (*pro hac vice*)<br>bill.goldman@dlapiper.com<br>David L. Alberti (CA Bar No. 220625) (*pro hac vice*)<br>david.alberti@dlapiper.com<br>**DLA PIPER US LLP**<br>2000 University Avenue<br>East Palo Alto, CA 94303<br>Tel.: (650) 833-2000; Fax: (650) 833-2001 |

**ATTORNEYS FOR DEFENDANT PALM, INC.**

| | |
|---|---|
| Michael E. Jones (State Bar No. 10929400) | Thomas J. Friel, Jr. |
| mikejones@potterminton.com | Tfriel@cooley.com |
| Diane V. DeVasto (State Bar No. 05784100) | Timothy S. Teter |
| dianedevasto@potterminton.com | Tteter@cooley.com |
| **POTTER MINTON,** A Professional Corporation | Matthew J. Brigham |
| 110 N. College, Suite 500 | mbrigham@cooley.com |
| Tyler, Texas 75702 | Brian P. Wikner |
| Tel.: (903) 597-8311; Fax: (903) 593-0846 | bwikner@cooley.com |
| | **Cooley Godward Kronish LLP - Palo Alto** |
| | Five Palo Alto Square |
| | 3000 El Camino Real |
| | Palo Alto, CA 94306-2155 |
| | Tel.: (650) 843-5000; Fax: (650) 857-0663 |

**ATTORNEYS FOR DEFENDANTS NINTENDO CO. LTD.
AND NINTENDO OF AMERICA**