IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| SAXON INNOVATIONS, LLC, | Civil Action No. 6:07-CV-00490-LED-JDL |
| *Plaintiff*, | |
| v. | JURY TRIAL DEMANDED |
| NOKIA CORP. *et al.*, | |
| *Defendants*. | |

**PLAINTIFF SAXON INNOVATIONS, LLC'S BRIEF IN OPPOSITION TO
DEFENDANTS' OBJECTIONS TO AND MOTION FOR RECONSIDERATION OF
THE CONSTRUCTION OF THE CLAIMS OF
U.S. PATENT NOS. 5,502,689, 5,592,555 AND 5,771,394**

## <u>TABLE OF CONTENTS</u>

**A.    U.S. Pat. No. 5,502,689** ........................................................................ 1

    1.    "disable request signal" .............................................................. 1

    2.    "predetermined length of time" ................................................ 4

    3.    "predetermined protocol requirement" .................................... 7

**B.    U.S. Pat. No. 5,592,555** ........................................................................ 8

    1.    "signal processing circuit" ........................................................ 8

    2.    "processing (the) communications signals" ............................. 9

    3.    "enciphering (the) (said) processed communication signals" ................. 10

    4.    "programmably selecting an enciphering algorithm" ............. 11

    5.    "enciphering algorithm" and "deciphering algorithm" ........... 12

**C.    U.S. Pat. No. 5,771,394** ...................................................................... 13

    1.    "master processor" ................................................................... 13

    2.    "respective indication signal" ................................................. 14

    3.    "respective portions of a same memory" ................................. 14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Comark Communications, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) ............... 9

*Globetrotter Software, Inc. v. Elan Computer Group, Inc.*,
   362 F.3d 1367, 1381 (Fed. Cir. 2004) ............................................................................ 11

*Omega Engineering, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1325-26 (Fed. Cir. 2003) .............. 5, 8

*Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) ....................................... 1, 6, 7, 10

*Primos, Inc. v. Hunter's Specialties Inc.*, 451 F.3d 841, 848 (Fed. Cir. 2006) ............................. 2

*SCICO TEC GmbH v. Boston Scientific Corp.*,
   599 F. Supp. 2d 741, 743 (E.D. Tex. 2009) .......................................................... 7, 13, 14

*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996) .......................... 2, 10

STATUTES

28 U.S.C. § 636(B)(1)(A) ................................................................................................ 1, 7, 13, 14

Plaintiff Saxon Innovations, LLC ("Saxon") submits this response to Defendants' Objections To and Motion for Reconsideration of the Construction of the Claims of U.S. Patent Nos. 5,502,689, 5,592,555 and 5,771,394 entered by Magistrate Love in his order dated July 30, 2009.

Defendants have not met their burden to show that Magistrate Judge Love's order is clearly erroneous or contrary to law, as required by § 636(b)(1)(A). Rather, the defendants simply advance arguments that Magistrate Judge Love carefully considered and properly rejected. Accordingly, the July 30, 2009 Order (hereinafter "Order") should be adopted as to the terms objected to by Defendants and their motion for reconsideration should be denied.

## A.  U.S. Pat. No. 5,502,689[1]

1.    "disable request signal"

| '689 Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction | Court's Construction |
|---|---|---|---|
| "disable request signal"  Claims 5, 8 | a signal to initiate entry into a shut-down mode | a signal that requests the system to stop the output clock signal and that starts the predetermined length of time | A signal requesting the system enter into shut-down mode |

The Court properly construed this term consistently with its use in the specification, and reconsideration of this term is neither necessary nor appropriate. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (the "proper definition is the definition that one of ordinary skill in the art could ascertain from the intrinsic evidence in the record"). The specification for the '689 Patent clearly supports the Court's construction, stating that "[e]ntry into the shut-down mode is under software control and may be initiated by writing the appropriate data via data bus 48 to a shut-down control register, such as the UCCCR register 42 shown in Fig. 1." '689 Pat., col. 7:59-62 (emphasis added). *See also* '689 Pat., Fig. 1. Defendants would improperly limit

---

[1] U.S. Pat. No. 5,502,689 is attached hereto as Exhibit A.

the signal to one in which the system stops the output clock signal.  As Magistrate Love properly

found "the patent specification consistently describes "shut-down mode" as a power saving mode

in which "the clock generator does not generate any clock signals." '689 Pat., col. 3:11-15.

(Order, DE311 at 9).  The plain language of the claim, however, refers to a request, and the term

'shut-down mode' is described throughout the specification as a mode in which clocks may be

disabled.  *See, e.g.*, '689 Pat., col. 3:11-15.  Thus a disable request signal is properly a "signal

requesting the system enter shut down mode."

     The defendants also attempt to import a requirement that the disable request signal also

start the predetermined length of time.  Magistrate Love carefully considered these arguments

and properly rejected them as an improper attempt by the defendants to read limitations into the

claims.  In fact, the defendants' proposed definition would exclude the disclosed embodiments of

Figure 1, and was properly found to be incorrect as a matter of law.  Order, DE 311 at 9; s*ee also

Primos Inc. v. Hunter's Specialties Inc.,* 451 F.3d 841, 848 (Fed. Cir. 2006) ([W]e ... should not

normally interpret a claim term to exclude a preferred embodiment."); *Vitronics Corp. v.

Conceptronic, Inc*., 90 F.3d 1576, 1583 (Fed. Cir. 1996) (stating a construction excluding the

preferred embodiment "is rarely, if ever correct and would require highly persuasive evidentiary

support").

     In addition, as the Court properly determined, the disable request signal does not need to

start the predetermined length of time in either the preferred embodiment or the claim.  Thus, the

Court's construction properly accounts for the figure 1 embodiment and the actual claim

language.  *See, e.g.*, '689 Pat., Fig. 1; col. 8:66 – col. 9:3.  The claim language simply requires

that the clock be stopped "after a predetermined length of time after receiving said disable

request signal." '689 Pat., col. 12:18-20.  It does not require that the disable request signal itself initiate that time.

The claim requires that the disable request signal be verified against a protocol.  The specification discloses a first signal (signal 48) that is verified against a protocol.  Defendants make the startling admission that "[n]othing in the specification states that the first signal triggers the predetermined length of time — indeed, unless the first signal is verified, the predetermined length of time never begins."  Def. Br. at 4.  Despite admitting that their proposed construction finds no support in the claim or specification, defendants press on to ask improperly for a rewrite of claim 5 so that it matches claim 1.  More specifically, defendants ask to require that in the claim, the disable request signal be interpreted as the different signal that is generated after the protocol verification step which starts a delay timer.  As Defendants themselves acknowledge, such a rewriting of claim 5 would be improper and the Court properly rejected this argument.

The Court's definition, wherein the disable request signal requests entry into shutdown mode, is well supported by the specification and is correct.  Moreover, contrary to defendants' position, determining infringement of claim 5 of the '689 Patent is not rendered "impossible" if the disable request signal does not start the predetermined length of time.  To the contrary, and as found in many of defendants products, there is a signal that requests entry into a shut down mode that is verified against a predetermined protocol requirement.  After that signal is received, there is some time period within a known time period that expires, and the clock can thereafter be disabled.  It is not required that Claim 5 include a limitation for the signal that starts the predetermined length of time, and the Court properly rejected Defendants' efforts to add one.

2.     "predetermined length of time"

| '689 Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction | Court's Construction |
| --- | --- | --- | --- |
| "predetermined length of time"<br><br>Claims 5, 8 | an amount of time defined prior to or at the time of receipt of the disable request signal | a definite amount of time fixed prior to receipt of the disable request signal | a length of time within a known period |
| "stopping said at least one output clock signal after a predetermined length of time after receiving said disable request signal"<br><br>Claim 5 | halting the output clock signal following an amount of time defined prior to or at the time of receipt of the disable request signal | stopping the output clock signal at the expiration of an amount of time that is fixed prior to, and starts from, receipt of the disable request signal | Not construed |

Defendants complain that the Court's construction of this term "creates substantial uncertainty about when a particular shut-down meets the requirements of the claim, for a number of reasons." Def. Br. at 4. It does not. Indeed, the Court considered and properly rejected all of Defendants' arguments. The Court's construction leaves no ambiguity as to when an accused product meets the requirements of the claim.

The Defendants previously acknowledged that the predetermined length of time is "set as the time when a specific pulse derived from an existing slow clock is generated." DE 272, at 6; *see also* '689 Pat., col. 7:13-16. Yet, the Defendants now feign lack of clarity as to when the predetermined length of time starts. Def. Br. at 5. In the preferred embodiment, this time is clearly shown as the time between state S1 and state S3 in Figure 3. '689 Pat., col. 8:30-45. The time between state S1 and state S2 is dependent upon the timing of assertion of the SDENTR signal, and therefore this entire predetermined length of time is variable and not defined until the predetermined protocol is satisfied and that signal is asserted. Defendants also acknowledge that signal 48 is part of the "disable request signal" and is received before the assertion of SDENTR.

-4-

The SDENTR signal is asserted simultaneously with state S1, which, as Defendants note, is the start of the predetermined length of time in the preferred embodiment.

The Court's construction accounts for the plain language of the claim that the length of time must be predetermined, or determined in advance, of the clock shut-down, but it is not required to be an exact, fixed time, determined in advance of receipt of the disable request signal. *See* '689 Pat., Figs. 2, 3; col. 8:26-46.

As the Court properly found, Defendants' proposed construction is inconsistent with the intrinsic evidence, cited above, which does not require the predetermined length of time to be a *fixed* amount of time, nor is it required to be *fixed prior to* receiving a disable request signal. Order, DE 311 at 11. As set forth above, the specification contemplates a time period that can vary depending on the state of the system. *See, e.g.*, col. 7:16-21 ("a user will have *at least 3.56 msecs* from the time entry into shut-down mode … *to perform any other necessary housekeeping routines*.") (emphasis added). Rather, the predetermined time can include a range (as explained above) allowing for performance of certain operations and "housekeeping" activities in preparation for shut-down. Furthermore, Defendants' position that this construction was "given up" during prosecution is inaccurate. Def. Br. at 6. Indeed, claim 5 (originally claim 17 in the application as filed) never contained the word "minimum." *See* Excerpts from the '689 Pat. File history attached hereto as Exhibit B; s*ee also Omega Engineering, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1325-26 (Fed. Cir. 2003) ("for prosecution disclaimer to attach, [Federal Circuit] precedent requires that the alleged disavowing actions or statements made during prosecution be both clear and unmistakable."). Defendants wrongly claim here that "the applicants changed the language of the claims during prosecution of the '689 patent." Def. Br. at 6. They did not. Rather, applicants cancelled certain claims without prejudice in favor of allowed claim 5.

Further, as the Court properly found, where the word "minimum" was removed from the claims, the patentee did not offer explanation of this change and a disavowal of scope was not made. Order, DE 311 at 11.

Defendants also wrongly argue that, in the preferred embodiment, "the oscillator 10 and its output clock signal are stopped **immediately** upon the second clock pulse from the 280.9Hz clock." Def. Br. at 5. This is neither true nor relevant to claim construction, as it is black letter law that claims are not limited to the disclosed embodiment. *Phillips*, 415 F.3d at 1323 (rejecting the contention that claims must be limited to disclosed embodiment even when there is only a singly embodiment disclosed because (1) "section 112 of the Patent Act requires that the claims themselves set forth the limits of the patent grant" and (2)"persons of ordinary skill in the art rarely would confine their definitions of terms to the exact representations depicted in the embodiments.").The claim states that the clock is stopped "after" a predetermined length of time, and does not say that the clock is stopped "immediately" upon expiration of that time. Further, as shown and described in the preferred embodiment, the clock may not be stopped after the expiration of the predetermined length of time. Indeed, an intervening interrupt may cause the timer to restart such that the clock is stopped at a later time. In the preferred embodiment, this time is clearly shown in the transition from state S2 back to state S0 prior to transition into state S3 where the clock is in fact stopped. *See, e.g.*, '689 Pat., col. 8:30-45 and Fig. 3.

Finally, it is not necessary, as Defendants assert, for the broader term "stopping said at least one output clock …" to be construed. As the Court correctly found, the dispute resided with the construction of "predetermined length of time," which has been resolved by the Court.

3.    "predetermined protocol requirement"

| '689 Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction | Court's Construction |
|---|---|---|---|
| "predetermined protocol requirement"<br><br>Claim 5 | a requirement of a defined protection scheme | Defendants contend that this claim term is more appropriately construed in the context of the larger claim phrase in which it appears, below. | a known set of rules |
| "verifying that said disable request signal satisfies a predetermined protocol requirement"<br><br>Claim 5 | confirming that said disable request signal meets a requirement of a defined protection scheme | confirming that the received disable request signal satisfies a predetermined series of steps | Not construed |

The Court's construction of this term is proper because it incorporates the plain and ordinary meaning of the word "protocol." *Phillips*, 415 F.3d at 1312-14.  Furthermore, defendants' proposed construction is in error at least because the disable request signal of the claim is itself required to satisfy "*a requirement*" of the "protocol" and not simply following a series of steps.  Also, the Defendants' "series of steps" construction improperly attempts to expand the claimed protection protocol beyond the scope of the invention for protecting the system during clock shutdown events.

In addition, simply citing to prior briefing, Defendants have failed to properly object to these terms as required by 28 U.S.C. § 636(b)(1)(A).  *See, e.g.*, *SCICO TEC GmbH v. Boston Scientific Corp.*, 599 F. Supp. 2d 741, 743 (E.D. Tex. 2009) (rejecting defendant's objections to claim construction order as merely "conclusory" objections, "no better than a complete failure to object", because defendants merely asserted objection, and relied on the argument and authorities set forth in its Responsive Claim Construction Brief.).  Thus, for that reason alone, defendants' objections to this term should be denied.

B.     U.S. Pat. No. 5,592,555[2]

1.     "signal processing circuit"

| '555 Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction | Court's Construction |
|---|---|---|---|
| "signal processing circuit"<br><br>Claims 1, 10, 21, 22, 24, 26, 43-46, 51 | a circuit, within a communications controller circuit, that executes program instructions to process communications signals and executes program instructions to encipher or decipher such signals | a signal processor that uses the same circuitry to load, store, and execute signal processing instructions and enciphering algorithms | A circuit that executes program instructions to process communications signals and executes program instructions to encipher or decipher such signals |

Defendants object to the Court's construction stating that "a circuit" does not provide the proper boundary as would the term "a processor." Defendants' argument misses the mark and essentially reasserts its prior attempts to improperly insert limitations into the claim.  The parties agree that a signal processing circuit performs the tasks of processing communications signals and executing instructions.  DE 272 at 15.  The specification supports Saxon's construction, which covers both a DSP and a general purpose microprocessor.  '555 Pat., col. 10:52-55 ("The present invention makes possible digital signature authentication and message encryption using either a single DSP or a single microprocessor …").  As the Court confirms, the claims do not require that the same circuitry in the "signal processing circuit" perform certain tasks.  All that the claim requires is that certain tasks be performed by the signal processing circuit and not the same circuitry within the signal processing circuit. The file history supports the position that encryption is integrated with the "signal processing **circuit**."  '555 Pat., Amendment at 30 (July 17, 1996), attached hereto as Exhibit D.  The Defendants cannot show a clear disavowal of claim scope in the file history with respect to this term, because there was none.  *Omega Eng'g, Inc.*,

---

[2] U.S. Pat. No. 5,592,555 is attached hereto as Exhibit C.

334 F.3d at 1324. Defendants' construction is overly limiting and its objections should be denied. *Comark Communications, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998).

      2.     "processing (the) communications signals"

| '555 Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction | Court's Construction |
|---|---|---|---|
| "processing (the) … communication(s) signals"<br><br>Claims 1, 10, 21, 43, 51 | performing a signal processing operation on (the) communication(s) signals | modifying the data to be transmitted prior to enciphering or after deciphering | Performing a signal processing operation on (the) communication(s) signals |

The Court's construction of this term fully and clearly accounts for the ordinary meaning of the term "processing" such that a trier of fact can determine infringement and validity. Indeed, prior briefing on this point ratifies that the Defendants' proposed definition and Saxon's proposed definition do not differ, in that, for example, forward error correction is one example of a signal processing operation that is performed on the communications signals. '555 Pat., col. 2:4-6; col. 10:23-32. Again, defendants admit that "error correction" is an example of a processing operation that involves a "modification" of the data to be transmitted. Def. Br., DE 272 at 18, fn. 7. Thus, it is unnecessary to revisit the construction determined by the Court, and defendants' objection should be denied, particularly in light of the fact that Saxon's proposal, adopted by the Court, follows the language of the claim.

3.    "enciphering (the) (said) processed communication signals"

| '555 Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction | Court's Construction |
|---|---|---|---|
| "enciphering (the) (said) processed communication signals"<br><br>Claims 1, 10, 21, 26, 43, 45, 51 | applying an enciphering algorithm to encrypt (the) (said) processed communication signals | applying an enciphering algorithm to the processed communication signals to make the processed communication signals private | Applying an enciphering algorithm to encrypt (the) (said) processed communication signals |

Defendants are blatantly attempting to insert a purpose limitation into the claims, namely, that the enciphering is done to make the communication signals private. However, the appearance of a word in the specification does not necessitate its insertion into the claims – the claim language itself governs its scope. *See Phillips* at 1312 (quoting *Vitronics*, 90 F.3d at 1582 ("we look to the words of the claims themselves ... to define the scope of the patented invention.")). Saxon's proposed definition, adopted by the Court, is more precise and well supported in the specification. *See, e.g.*, '555 Pat., col. 3:6-11; 4:18-35; 8:23-25, 52-56. Defendants' assertion that the inclusion of the "privacy" limitation in the claims would be clearer to a fact finder is merely an effort to inappropriately limit the claims. The claims require only that a signal is enciphered. The purpose of enciphering is not a limitation in the claim, and importing such a limitation creates confusion for a trier of fact, rather than eliminating it. Although "privacy" may be one purpose of encrypting a signal, it is not the only purpose, nor do the claims require it to be. Thus, the Court's construction provides a clear definition and should be affirmed.

4.    "programmably selecting an enciphering algorithm"

| '555 Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction | Court's Construction |
|---|---|---|---|
| "programmably selecting an enciphering algorithm" | executing in a signal processing circuit a set of program instructions to select one of a plurality of enciphering algorithms | executing a set of program instructions to select one from among a plurality of enciphering algorithms | executing in a signal processing circuit a set of program instructions to select one of a plurality of enciphering algorithms |

By the plain language of the claims, there is no doubt that the "**signal processing circuit** comprises circuitry and instructions for enciphering said processed communication signals **in said signal processing circuit** by programmably selecting an enciphering algorithm." '555 Pat., col. 20: 21-24 (emphasis added). The defendants' proposed definition of this term ignores the actual claim language and selectively attempts to read limitations out of the claims. Although Defendants suggest otherwise, the plain language of the claim calls for a signal processing circuit that programmably selects: to state otherwise is to improperly read the clause in an illogical way. The Court's construction appropriately adheres to the actual language of the claim and is therefore correct.

In addition, contrary to Defendants' argument, the Court does not "acknowledge that the current construction of this term excludes embodiments of the patent." Def. Br. at 13. The Court merely acknowledges that "a construction which would result in excluding the preferred, and only, embodiment is 'rarely, if ever, correct.'" Order, DE 311, at 18 (quoting *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 362 F.3d 1367, 1381 (Fed. Cir. 2004)). The Court's construction, however, does not exclude the preferred embodiment. Defendants' objections of this construction should be denied.

5.      "enciphering algorithm" and "deciphering algorithm"

| '555 Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction | Court's Construction |
|---|---|---|---|
| "enciphering algorithm"<br><br>Claims 10, 26, 45, 51<br><br>"deciphering algorithm"<br><br>Claim 46 | a prescribed set of well-defined rules or processes for the solution of a problem in a finite number of steps | A series of steps for encrypting signals/decrypting signals | a prescribed set of well-defined rules or processes for encrypting signals/decrypting signals |

Defendants object to the Court's exclusion of the phrase "a finite number of steps," because they claim that this language does not define the general purpose of an algorithm. Def. Br. at 14. Instead, Defendants categorize the language "a finite number of steps" as defining "the method in which an 'algorithm' accomplishes its general purpose." *Id.* As clearly explained by the Court, such language is superfluous to the definition of "algorithm." The term "algorithm" is properly construed by defining what it is: a prescribed set of well defined rules or processes. That prescribed set of well defined rules or processes is used to either encrypt or decrypt signals. The Court has not omitted "the method" according to which an algorithm operates, but even if it did, the definition of a term need not include "the method" by which it operates.

### C.   U.S. Pat. No. 5,771,394[3]

1.   "master processor"

| '394 Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction | Court's Construction |
|---|---|---|---|
| "master processor"<br><br>Claim 11 | general purpose processor not under control of a signal processor | a general purpose microprocessor, not under the control of a signal processor, that controls the apparatus | general purpose processor not under control of a signal processor |

Defendants once again attempt to insert an additional limitation into the claim – that the master processor also control the apparatus.  As the Court confirms, although it is an aspect of the preferred embodiment that the processor may control the apparatus, it is not a requirement of the claim.  *See, e.g.*, '394 Pat., col. 2:15-16.  During prosecution, Saxon clearly differentiated the master processor because it "does not allow a slave processor to take over control of the master processor at any time," not because it controls the apparatus, as defendants imply.  *See* Amendment 8/26/1997, p. 5, attached hereto as Exhibit F.  In addition, by relying on prior briefing, Defendants have failed to properly object to these terms as required by 28 U.S.C. § 636(b)(1)(A).  *See, e.g., SCICO TEC GmbH*, 599 F. Supp. 2d at 743.  Thus, for that reason alone, Defendants' objections to this term should be denied.

2.   "respective indication signal"

---

[3] U.S. Pat. No. 5,771,394 is attached hereto as Exhibit E.

| '394 Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction | Court's Construction |
|---|---|---|---|
| "respective indication signal"<br><br>Claim 11 | a respective signal to said master processor so as to indicate to said master processor | a signal generated by a signal processor that instructs the master processor to read that signal processor's exclusive memory | No construction necessary |

Defendants' proposed construction, which attempts to attribute the action of "instructing" to the "indication signal," is inconsistent with the entire purpose of the claim. The Court properly construes this term consistently with its definition for master processor. Notably, defendants admit that the master processor is not under the control of a signal processor, yet in their definition of "indication signal," the signal processor "instructs" the master processor. Thus, defendants' proposed definition inserts a limitation into the claims, and is improper. In addition, by relying on prior briefing, defendants have failed to properly object to these terms as required by 28 U.S.C. § 636(b)(1)(A). *See, e.g., SCICO TEC GmbH*, 599 F. Supp. 2d at 743. Thus, for that reason alone, Defendants' objections to this term should be denied.

3.      "respective portions of a same memory"

| '394 Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction | Court's Construction |
|---|---|---|---|
| "said plurality of memories comprise respective portions of a same memory"<br><br>Claim 12 | said plurality of memories comprise allocated corresponding memory locations of a single memory device | The plurality of memories are respective blocks of a single memory device | said plurality of memories comprise allocated corresponding memory locations of a single memory device |

It is unclear to what Defendants are objecting in their discussion of this term. By failing to specifically object to the Court's construction of this term, Defendants have failed to properly object to this term as required by 28 U.S.C. § 636(b)(1)(A). *See, e.g., SCICO TEC GmbH*, 599

F. Supp. 2d at 743. Thus, for that reason alone, Defendants' objections to this term should be denied.

Dated:  August 20, 2009

Respectfully submitted,

/s/      *T. John Ward, Jr.*
William D. Belanger
BBO# 657184
belangerw@pepperlaw.com
Michael T. Renaud
BBO# 629783
renaudm@pepperlaw.com
Ibrahim M. Hallaj
BBO# 661333
hallaji@pepperlaw.com
Aaron J. Levangie
BBO# 652052
levangiea@pepperlaw.com
(All admitted *pro hac vice*)
Alexandra C. Fennell
BBO# 658692
fennella@pepperlaw.com
(Admitted)
**PEPPER HAMILTON LLP**
125 High Street
Oliver Street Tower, 15th Floor
Boston, MA 02110
Phone (617) 204-5100


John Ward, Jr.
State Bar No. 00794818
**WARD & SMITH LAW FIRM**
111 W. Tyler St.
Longview, Texas 75601
Phone (903) 757-6400
Fax (903) 757-2323
E-mail: jw@jwfirm.com

**Counsel for Saxon Innovations, LLC**

-15-

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this the 20th day of August 2009. All counsel of record, as listed on the Court's ECF notices, are being served with a copy of this document via electronic mail on this 20th day of August, 2009.

/s/     *T. John Ward, Jr.*
T. John Ward, Jr.