**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| SAXON INNOVATIONS, LLC, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>NOKIA CORP., *et al.*, )<br>)<br>Defendants. )<br>) | Civ. Action No. 6:07-CV-490-LED-JDL<br><br>**JURY TRIAL DEMANDED** |

### SAXON INNOVATIONS, LLC'S EMERGENCY MOTION TO AMEND THE PROTECTIVE ORDER

Plaintiff Saxon Innovations, LLC ("Saxon") hereby moves to amend the Court's Protective Order approved and entered in this case on August 18, 2008. Specifically, Saxon seeks to:

(1) Amend Paragraph 20 of the Protective Order to allow Saxon to provide information designated as "Confidential" or "Highly Confidential – Attorneys' Eyes Only" by a defendant or third party on which one or more of Saxon's experts has relied to a defendant's outside counsel and approved experts in the form of Saxon's expert reports on an Attorneys' Eyes Only basis without requiring agreement of the producing party in order to do so; and

(2) Amend Paragraph 15 of the Protective Order to clearly provide that, to the extent one or more of Saxon's experts has relied on the Confidential or Highly Confidential information of any defendant in the course of the litigation, Saxon and its expert(s) may continue to retain and rely on that information for the remainder of the litigation even if such defendant is terminated from this action by dismissal, judgment, or settlement.

Saxon respectfully requests that the Court enter the proposed Amended Protective Order, a copy of which is attached as Exhibit 1.[1] Defendants Palm, Inc. ("Palm"), Nintendo Co., Ltd. and Nintendo of America ("Nintendo"), Samsung Electronics Co., Ltd., Samsung Electronics America, Inc. and Samsung Telecommunications America ("Samsung"), and Research in Motion, Ltd. and Research in Motion Corp. ("RIM") oppose this motion.

## FACTS

Throughout the course of this litigation, the defendants have designated the vast majority of the information they have produced as either "Confidential" or "Highly Confidential – Attorneys' Eyes Only" under Paragraph 1 of the Protective Order. This includes all of the financial data and information that the defendants have produced and that Saxon and its experts have relied on in preparing its damages case as to each of the accused products.

As is common in multi-defendant patent infringement cases, particularly where the accused parties are practicing in the same industry space or marketplace, Saxon's damages expert, Stephen L. Becker, Ph.D., prepared a single report relying on Confidential and Highly Confidential Information produced by each of the defendants. Dr. Becker presents a reasonable royalty analysis grounded in the defendants' own documents and testimony about licensing patents that pertain to technology similar to the technology used in the accused products.

Paragraph 20 of the Protective Order states:

> In no case shall any information designated as CONFIDENTIAL INFORMATION by a Defendant be provided to any other Defendant or Defendant's counsel by any party or counsel absent explicit agreement from the Defendant designating the information.

---

[1] For the Court's convenience, a redlined version of the original Protective Order tracking Saxon's proposed changes is attached as **Ex.** 2.

Thus, in conjunction with serving its expert report on outside counsel for Nintendo, Palm, and Samsung, Saxon sought the permission required by Paragraph 20.[2]  Nintendo, Palm and Samsung ultimately agreed to Saxon serving a single damages report on all defendants.  RIM, however, refused to allow Saxon to present the portions of Dr. Becker's report that relate to or rely on RIM's Confidential or Highly Confidential information to Nintendo, Palm and Samsung.

RIM's refusal has prejudiced Saxon, leaving it unable to present its damages analysis in the form of the single, comprehensive report which Dr. Becker properly prepared based on, among other things, the documents produced by all of the defendants in this case which he reviewed in preparing his analysis.[3]  The analyses conducted by Dr. Becker are based upon evidence produced by all four remaining defendants in this matter, including RIM.  His approach to assessing a reasonable royalty is based on the well-established Georgia-Pacific factors, including evidence related to defendants' and industry licensing of patents for comparable technology.  Elimination of the RIM information and documents from the body of evidence Dr. Becker may rely on, after Dr. Becker has completed his expert report, would, at a minimum, alter the context within which his opinions were reached.  Saxon therefore requests that the Court grant this motion to amend Paragraph 20 of the Protective Order as set forth in the attached Exhibit 1.

---

[2]  Saxon and RIM have reached settlement and Saxon anticipates moving to dismiss RIM from the case. *See* D.E. 373.

[3]  As an interim solution to this problem, Saxon served a redacted copy of Dr. Becker's report which redacted RIM's confidential information.  As required by the Federal Rules of Civil Procedure, Dr. Becker's report listed all documents relied upon in preparing his report, including those produced by RIM.  Fed. R. Civ. P. 26(a)(2)(B) ("Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report — prepared and signed by the witness — if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain: ...(ii) the data or other information considered by the witness in forming them; ...")

In anticipation of a related problem that could also prevent Saxon from serving the complete report prepared by Dr. Becker, Saxon also seeks clarification of Paragraph 15 of the Protective Order which states:

> 15. Upon termination of this action by dismissal, judgment, or settlement, counsel for the party or parties receiving Protected Documents shall destroy or return the Protected Documents to the counsel for the party or parties disclosing or producing the Protected Documents. The party or parties receiving the Protected Documents shall keep their attorney work product which refers or relates to any Protected Documents.

If Paragraph 15 is left in place as currently drafted and one or more of the remaining defendants are terminated from the case by dismissal, judgment or settlement (as RIM is about to be), a number of logistical problems would ensue. First, Dr. Becker would be left in the untenable position of somehow having to segregate his comprehensive damages analysis into a piecemeal report that would exclude portions of the information on which he initially relied in forming the opinions expressed in his original report. Second, Saxon would be forced to present separate damages cases at trial, resulting in not just logistical problems but also inefficiencies and additional burdens on the court.[4] Therefore, Saxon also requests that Paragraph 15 be amended to permit Saxon and its experts to continue to retain and rely on Confidential or Highly Confidential information of any defendant gained in the course of discovery and relied upon in forming expert opinion for the remainder of the litigation even if that defendant is terminated from this action by dismissal, judgment, or settlement.

---

[4] This motion has been most immediately prompted by issues surrounding Saxon's damages expert report. However, the same problems could also very well arise in the context of Saxon's presentation of its infringement case against the defendants.

# ARGUMENT

## I. Summary of the Law

Rule 26(c) allows the court to enter a protective order for good cause to protect a party from, among other things, revealing certain commercially sensitive information. Fed. R. Civ. P. 26(c)(1)(G). The court enjoys broad discretion in entering and modifying any such order. *Raytheon Co. v. Indigo Sys. Corp.*, Case No. 4:07-cv-109, 2008 WL 4371679 (E.D. Tex. 2008) *citing Abraham v. Intermountain Health Care Inc.,* 461 F.3d 1249, 1268 (10th Cir. 2006); *Peoples v. Aldine Indep. School Dist.,* Civ. A. No. 06-2818, 2008 U.S. Dist. LEXIS 47946, at *4, 2008 WL 2571900 (S.D. Tex. June 19, 2008).

In deciding whether to modify a stipulated protective order, the court considers four factors: "(1) the nature of the protective order, (2) the foreseeability, at the time of issuance of the order, of the modification requested, (3) the parties' reliance on the order; and most significantly (4) whether good cause exists for the modification." *Id.* at *2 citing *Peoples,* at *5 (quoting *Murata Mfg. Co., Ltd. v. Bel Fuse, Inc.,* 234 F.R.D. 175, 179 (N. D. Ill. 2006), in turn citing *Bayer,* 162 F.R.D. at 458).

## II. Saxon Has Good Cause to Amend The Protective Order.

### A. The Requested Modification Is Appropriate in this Case Because the Court Entered the Type of Protective Order that Is Routinely Modified on a Showing of Good Cause.

In evaluating whether to amend a protective order, the court first considers the nature of the protective order. "Protective orders generally may be ascribed one of three labels." *Raytheon Co.*, 2008 WL 4371679 at *2:

> Specific protective orders are the narrowest type and cover specifically identified information. *Bayer,* 162 F.R.D. at 465. Umbrella protective orders are at the other end of the spectrum and provide for the designation of all discovery as protected without any screening by either the parties or the court. *Id.* Blanket

protective orders, which require the parties to designate as protected that information that each side reasonably believes to be particularly sensitive are common in litigation between direct competitors. *Id.* Specific protective orders are the least susceptible to modification, umbrella protective orders are the most susceptible to modification, and blanket protective orders fall somewhere in between. *Murata,* 234 F.R.D. at 179.

*Id.*

The Protective Order at issue in this case is a blanket order that allows the parties to designate information that they, in good faith, deem to be worthy of heightened protection. The Protective Order in this case does not specifically define information that may be designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY." Instead, the Protective Order allows parties to designate any information that they believe requires protection. Paragraph 2 merely provides examples of what may and may not be protected:

> Protected Documents shall not include (a) advertising materials, (b) materials that on their face show that they have been published to the general public, or (c) documents that have been submitted to any governmental entity without request for confidential treatment. By way of non-limiting example, Protected Documents in one or more of the following categories may qualify for the "HIGHLY CONFIDENTIAL — ATTORNEYS' EYES ONLY" designation: (i) non-public technical information, including schematic diagrams, manufacturing and engineering drawings, engineering notebooks, specifications, research notes and materials, technical reference materials, and other nonpublic technical descriptions and/or depictions of the relevant technology; (ii) non-public damage-related information (e.g., the number of products sold, total dollar value of sales products, and profit margins); (iii) non public financial information; (iv) customer lists; (v) business and/or marketing plans; (vi) price lists and/or pricing information; and (vii) information obtained from a non-party pursuant to a current non-disclosure Non-Disclosure Agreement ("NDA").

Blanket orders, such as this, are among those that courts typically modify upon a showing of good cause. *See Murata,* 234 F.R.D. at 179. This factor supports the requested modification.

### B. The Need For the Modification to Paragraph 20 Was Not Foreseeable When the Parties Negotiated the Protective Order.

Foreseeablity is a question of "whether the need for modification of the order was foreseeable *at the time the parties negotiated the original stipulated protective order*." *Raytheon Co.*, 2008 WL 4371679 at *2 citing *Murata,* 234 F.R.D. at 180 (internal quotations omitted) (emphasis added). At the time the parties negotiated the Protective Order, Saxon could not and did not yet appreciate how the sales, marketing, and licensing activities of the individual defendants might inform Dr. Becker's analysis and/or the opinions he would ultimately express in his report. Indeed, neither Saxon nor Dr. Becker made this determination until they had received and reviewed the defendants' documents and had taken relevant deposition testimony, which did not even begin to occur until months after the Protective Order was negotiated. Moreover, Saxon could not yet have appreciated precisely how Dr. Becker would choose to draft his report or to what extent the potential dismissal of a defendant from the case after preparation of the report would impact the report. Nor could Saxon have foreseen that a defendant would settle out of the case after its expert had begun and largely completed his analysis and just prior to the deadline for expert reports. This factor supports the requested modification.

### C. The Remaining Parties In This Litigation Did Not Rely on Paragraph 20 in the Context of Service of Expert Reports.

The reliance factor focuses on the extent to which the party opposing the modification relied on the protective order in deciding the manner in which documents would be produced in discovery. *Bayer,* 162 F.R.D. at 467; *Murata,* 234 F.R.D. at 180; *Peoples,* 2008 U.S. Dist. LEXIS 47946 at *6-7. First, Nokia Corp. and Nokia, Inc. – the defendants who originally insisted on the inclusion of Paragraph 20 as it appears in the Order – have long since been

dismissed from the case.[5] Second, Paragraph 20 makes no mention of expert reports, so the parties would not have relied on this provision to govern the use of confidential materials in this context. Moreover, the fact that three of the four remaining defendants have agreed to let Saxon serve a single unredacted damages expert report disclosing each of their confidential information and documents further illustrates that they did not rely on the provisions of Paragraph 20 in the context of serving expert reports. Finally, because it is customary in this Court that information designated as protected under a protective order would likely be shared with all parties at trial, Saxon's understanding was that this provision went to *when*, not *if*, such information would be disclosed to all parties. Thus, no defendant, including RIM, can credibly argue that it believed its information would *never* be shared with outside counsel for other defendants based on this provision of the Protective Order.[6] This factor supports the requested modification.

### D. Most Importantly, Good Cause Exists to Modify Paragraph 20 of the Protective Order.

Saxon has good cause to modify Paragraph 20. "Good cause" requires "changed circumstances or new situations" warranting modification of a protective order. *Murata,* 234 F.R.D. at 180. In determining whether the moving party has established good cause, "the court must weigh that party's need for modification against the other party's need for protection, and ought to factor in the availability of alternatives to better achieve both sides' goals." *Murata,* 234

---

[5] *See* Plaintiff's Unopposed Motion to Dismiss [D.E. 270], filed May 13, 2009.

[6] Indeed, throughout this litigation, the defendants have continually asserted the use of a joint defense agreement and/or privilege. To the extent that such an agreement exists, defendants appear to already have shared their protected information with each other. Further, the defendants shared the same technical experts offered to testify as to the alleged noninfringement of two of the patents Saxon asserts in this litigation, U.S. Pat. Nos. 5,592,555 and 5,502,689. The noninfringement opinions of these experts reference confidential information of each defendant, again showing that the defendants have already allowed each other access to their respective confidential information.

F.R.D. at 180. The need for this modification to permit Saxon to fairly present Dr. Becker's analysis outweighs RIM's interest in shielding its information from limited disclosure *only to outside counsel and approved experts under the terms of a Protective Order*. Further, as stated above, Saxon could not have known when it negotiated the terms of the Protective Order how its expert would ultimately analyze information that at the time had yet to even be produced by the defendants.

The analyses conducted by Dr. Becker are based upon evidence produced by all four defendants in this matter, including RIM. Dr. Becker's approach to assessing a reasonable royalty is based on the well-established Georgia-Pacific factors, including evidence related to the defendants' and industry licensing of patents for comparable technology. Elimination of the RIM documents from the body of evidence Dr. Becker may rely on, after Dr. Becker has completed his expert report, could tend to unfairly present the results of his analyses and alter the context within which his opinions were reached. This factor supports the requested modification.

Thus, because all factors relevant to the court's decision weigh in favor of granting Saxon's motion to amend Paragraph 20 of the Protective Order, Saxon respectfully requests that the Protective Order be amended as set forth in Exhibit 1.

### III. Continuing Access to Defendants' Protected Information For Purposes of Expert Reports and Testimony is Appropriate and Fair.

Saxon also seeks clarification of the applicability of Paragraph 15 of the Protective Order to Confidential or Highly Confidential information used in an expert report and modification of this provision, to the extent necessary, to allow Saxon to continue to use and rely upon

information belonging to any producing party that one or more of Saxon's experts has relied upon to form their opinion. Paragraph 15 of the Protective Order states as follows:

> 15. Upon termination of this action by dismissal, judgment, or settlement, counsel for the party or parties receiving Protected Documents shall destroy or return the Protected Documents to the counsel for the party or parties disclosing or producing the Protected Documents. The party or parties receiving the Protected Documents shall keep their attorney work product which refers or relates to any Protected Documents.

Paragraph 15, and indeed the Protective Order as a whole, fails to address the issue Saxon now raises – namely, whether Saxon would be required to return or destroy protected documents produced by a party who has been terminated from the case while the case is still pending against other defendants and the information in those documents remains relevant and has already been incorporated into an expert report completed prior to the producing party's termination from the case.

Requiring Saxon to destroy and return protected documents that contain information already incorporated into its expert's analysis would prejudice Saxon.[7] Moreover, there exists good cause to modify this provision because the requested modification will save costs associated with duplicative discovery that would otherwise be necessary. Indeed already, due to RIM's refusal to allow Saxon to present a unified damages report, Saxon has had to serve a subpoena seeking the very same information already within its possession. This redundant exercise has already created unnecessary delay and expense. Further, RIM has now threatened to move to quash the subpoena which will impose still more delay and expense on the parties and the Court. It is also clear that, absent the Court's intervention, Saxon's ability to serve Dr. Becker's complete report will be, at a minimum, delayed even further than it already has been.

---

[7] This provision is only prejudicial to Saxon as the sole plaintiff because termination of Saxon would result in termination of the entire case.

Courts have repeatedly agreed to modify a protective order to prevent duplicative discovery and allow for such efficiencies:

> As a general proposition, pretrial discovery must take place in the public unless compelling reasons exist for denying the public access to the proceedings'. This presumption should operate with all the force when litigants seek to use discovery in aid of collateral litigation on similar issues, for in addition to the abstract virtues of sunlight as disinfectant, access in such cases materially eases the tasks of courts and litigants and speeds up what may otherwise be a lengthy process… We therefore agree with the result reached by every other appellate court which has considered the issue, and hold that where an appropriate modification of a protective order can place private litigants in a position they would otherwise reach only after repetition of another's discovery, such modification can be denied only where it would tangibly prejudice substantial rights of the party opposing modification.

*Phillips Petroleum Co. v. Pickens et al*, 105 F.R.D. 545, 551 (N.D. Tex. 1985) (modifying protective order to allow third party intervenor to access information initially protected from disclosure by protective order) and *Bell v. Chrysler Corp.*, Case No. 99-cv-0139, 2002 WL 172643 at *2 (N.D. Tex. Feb. 1, 2002) both quoting *Wilk v. American Medical Association*, 635 F.2d 1295, 1299 (7th Cir. 1980). Here, because a terminated party would be obligated to re-produce such information sought by subpoena, any such party would not be tangibly prejudiced by having its information kept in the case.

Accordingly, in the event that any remaining defendant (including RIM) is terminated from this case (by dismissal, settlement, or otherwise), Saxon seeks the Court's confirmation that Saxon and its expert(s) may retain and continue to rely on the terminated party's information to the extent that information informed expert opinion(s).

    **A.    The Requested Clarification as to Paragraph 15 of the Protective Order is Appropriate.**

As stated above, Paragraph 15 does not address the issue Saxon now faces. The rest of the Order is likewise silent on this specific issue of use of protected information in expert reports following a producing party's dismissal from the case. Absent the clarification Saxon

requests, it will remain unclear how the parties must treat the Confidential and Highly Confidential information produced by a party as to whom this litigation has been terminated where that information has already been incorporated into a completed expert report.

### B. The Need For This Clarification and the Proposed Modification Was Not Foreseeable When the Parties Negotiated the Terms of the Protective Order.

Certainly, if the ambiguity Saxon now raises had been identified by the parties at the time of drafting, the parties would have clarified the intent and applicability of Paragraph 15 in the context of expert reports. However, none of the parties requested clarification. This is understandable given that the provision does not make any mention of expert reports. Thus, the question of whether and/or how this provision should apply to information and documents which inform an expert's analysis and testimony was simply not foreseeable. *Raytheon Co.*, 2008 WL 4371679 at *2 citing *Murata,* 234 F.R.D. at 180 (internal quotations omitted) (Foreseeablity is a question of "whether the need for modification of the order was foreseeable at the time the parties negotiated the original stipulated protective order.").[8]

### C. The Remaining Parties In This Litigation Could Not Have Reasonably Relied on This Provision in the Context of Expert Reports.

As stated above, the reliance factor focuses on the extent to which the party opposing the modification relied on the protective order in deciding the manner in which documents would be produced in discovery. *Bayer,* 162 F.R.D. at 467; *Murata,* 234 F.R.D. at 180; *Peoples,* 2008 U.S. Dist. LEXIS 47946 at *6-7. No party could reasonably rely on this provision to confirm that its information would be immediately destroyed or returned once such information was

---

[8] Moreover, this provision only applies to Saxon as a single party litigating amongst multiple defendants. As discussed in Section II.B. above, Saxon could not and did not yet appreciate how the sales, marketing, and licensing activities of the individual defendants might inform Dr. Becker's analysis and/or how that analysis might inform the opinions he would ultimately express in his report. Indeed, neither Saxon nor Dr. Becker could have conducted this analysis until they had received and reviewed discovery provided by defendants which was provided months after the Protective Order was negotiated.

relied upon for expert opinion or at trial. Paragraph 15 is silent as to the treatment of such information once it is relied upon for the formation of expert opinion. Moreover, the defendants are sophisticated parties familiar with multi-defendant litigation and familiar with the practice of serving expert reports directed to more than one defendant. As such, they could not reasonably have expected that this provision (or Paragraph 20) would prevent Saxon from serving a unified damages report.

Further, such requirement of immediate destruction or return of documents creates the illogical and unworkable scenario where an expert that has relied upon information in forming his opinion is then required to discard the information and to abridge his opinion to omit such information. Beyond the numerous practical challenges this would present, as a matter of sheer logic an expert cannot simply erase his or her knowledge gained from previously reviewing the protected information.[9]

### D. Good Cause Exists to Modify the Protective Order to Clarify Paragraph 15 As Requested.

Again, Saxon has good cause to modify the protective order, this time to clarify the meaning and scope of Paragraph 15. "Good cause" requires "changed circumstances or new situations" warranting modification of a protective order. *Murata,* 234 F.R.D. at 180. In determining whether the moving party has established good cause, "the court must weigh that party's need for modification against the other party's need for protection, and ought to factor in the availability of alternatives to better achieve both sides' goals." *Murata,* 234 F.R.D. at 180.

---

[9] Significantly, Saxon's proposed amendments to this provision would not alter the assurance that Saxon would eventually be required to return or destroy all protected documents, either when all remaining parties had been dismissed from the case or upon the entry of a final, non-appealable judgment in the case as to all remaining defendants.

As stated above, Saxon could not have known how the information that would ultimately be produced by one party might impact a reasonable royalty analysis when it negotiated the terms of the Protective Order. The analyses conducted by Dr. Becker are based upon evidence produced by all four defendants in this matter. Dr. Becker's approach to assessing a reasonable royalty is based on the well-established Georgia-Pacific factors, including evidence related to defendants' and industry licensing of patents for comparable technology.

Furthermore, the balance of interests weighs in favor of Saxon. Saxon seeks to rely on information relevant to the well-known Georgia-Pacific factors. Saxon is entitled to present the evidence on which Dr. Becker has relied. Indeed, if such information were not available through the defendants, Saxon would likely have approached discovery on these issues differently. In contrast, it is difficult to see how, if at all, a producing party would be prejudiced by the carefully tailored relief Saxon is seeking.

## CONCLUSION

Accordingly, because all factors relevant to the court's decision weigh in favor of granting Saxon's Motion to Amend the Protective Order, Saxon respectfully requests that the Court amend the order as set forth in Exhibit 1.

-15-

October 13, 2009                                Respectfully submitted,

/s/ Alexandra C. Fennell
William D. Belanger, BBO# 657184
belangerw@pepperlaw.com
Michael T. Renaud, BBO# 629783
renaudm@pepperlaw.com
Ibrahim M. Hallaj, BBO# 661333
hallaji@pepperlaw.com
Aaron J. Levangie, BBO# 652052
levangiea@pepperlaw.com
(All admitted pro hac vice)
Alexandra C. Fennell, BBO#65892
fennella@pepperlaw.com
(Admitted)
**PEPPER HAMILTON LLP**
125 High Street
Oliver Street Tower, 15th Floor
Boston, MA 02110
Phone (617) 204-5100
Fax (617) 204-5150

T. John Ward, Jr.
State Bar No. 00794818
**WARD & SMITH LAW FIRM**
111 W. Tyler St.
Longview, Texas 75601
Phone (903) 757-6400
Fax (903) 757-2323
E-mail: jw@jwfirm.com

**COUNSEL FOR SAXON INNOVATIONS, LLC**

**CERTIFICATE OF CONFERENCE**

I certify that, in filing this motion, Counsel for Saxon Innovations, LLC, including William Belanger (lead counsel), Jack Wesley Hill (local counsel), myself and Courtney Quish conferred with counsel for Defendant Palm, Inc. ("Palm"), Elizabeth Day, counsel for Defendant Nintendo Co., Ltd. and Nintendo of America ("Nintendo"), Matthew Brigham, counsel for Defendants Samsung Electronics Co., Ltd., Samsung Electronics America, Inc. and Samsung Telecommunications America ("Samsung"), Michael Plimack, and counsel for Defendants Research in Motion, Ltd. and Research in Motion Corp. ("RIM"), Peter Chassman on October 13, 2009 in good faith and concluded, in good faith, that discussions have conclusively ended in an impasse. This motion is opposed.

/s/ Alexandra Fennell_____
Alexandra C. Fennell

**CERTIFICATE OF SERVICE**

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served this 13th day of October, 2009, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3). Any other counsel of record will be served by electronic mail, facsimile transmission and/or first class mail on this same date.

/s/ Alexandra C. Fennell_____
Alexandra C. Fennell